Halleck v. Bresnahen.

---

## HALLECK et al. v. BRESNAHEN.

(November 22, 1888.)

APPEAL—FAILURE TO FURNISH ABSTRACT OF RECORD—AMENDMENT — ALLOWANCE OF — BUILDING CONTRACT—REMEDY FOR BREACH—WAIVER.

1. As by statute the rules of practice of the supreme court are as binding upon the several courts and the parties practicing therein as if they were enactments by the legislative authority, and as one of the rules requires the plaintiff in error to furnish printed copies of an abstract of the record, if the plaintiff in error fails to furnish such abstract the judgment will be affirmed, in the absence of an express understanding that the case shall be heard and decided on its merits.

2. In order to give a defendant the right to set up a new defense by amendment of his answer after most of the evidence is in, he must show affirmatively that he had not prior knowledge of such defense.

3. When a man contracts to build a house upon the land of another, of suitable materials,

and in a workmanlike manner, and fails to carry out his contract, in regard either to the work or the materials, to the substantial injury of the other party to the contract, the latter may either deduct from the contract price of the building the amount in which he is damaged, or he may pay the contract price, take possession of the building, and afterwards recover of the builder for his failure to do the work according to the terms of the contract; and such recovery may be had whether or not he knew of the breach of contract at the time he made payment of the contract price to the builder.

4. An estoppel cannot be founded upon words, acts, or silence, unless there was an intention to induce the person setting up the estoppel to act upon them, and he did act upon them, and was injured thereby.[1]

Error from district court, Albany county.

Action by one Bresnahen against Halleck Bros. on a bond given for the performance of a building contract made by Dawson & Hawes. Judgment for plaintiff, and defendants bring error. Affirmed.

C. N. Potter and Decker & Yonley, for plaintiffs in error. Corlett & Rosendale, for defendant in error.

PARKS, J. In this case the defendant in error filed his motion to dismiss the writ of error, and supported it by a number of points, arguments, and authorities. The third point made and insisted on is that the plaintiff in error did not file with the clerk of this court printed abstracts of the record at the time, in the manner, and in the form required by law. The statute of this territory provides that the rules of practice of this court shall be as binding upon the several courts, and the parties practicing and having business therein, as though the same were enactments of the legislative authority of this territory. One of the rules of this court requires "that the plaintiff in error shall deliver to the clerk 14 printed copies of an abstract of so much of the record as is necessary for a full understanding of all the questions presented to this court for decision," and "if the defendant in error shall deem the abstract of the appellant or plaintiff in error imperfect, he may within twenty days after the delivery of said copies to the clerk deliver to the latter 14 printed copies of such further or additional abstracts as he shall deem necessary to a full understanding of the questions presented to this court for decision."

The abstract here made imperative is

---

[1] See note at end of case.

not the transcript, which is a full copy of the record, but an epitome, abridgment, or compendium, in which is condensed the substance of the record, so as to enable the court, in language of a learned judge, "to extract the controversy in the case from the mass of matter unconnected with it, without performing hours of labor which ought to have been done by the counsel for appellant, under the rule which is so reasonable in itself, and so necessary and indeed indispensable to the progress of the court in the discharge of its duty." Perhaps there never was a case in this court that more clearly illustrates the utility of this rule and the necessity of its enforcement than the present one. The transcript consists of 442 pages, and the errors assigned were originally 70. No abstract has been filed, and as the case stands the court is obliged to examine this entire record.

The supreme courts of Indiana, Illinois, Missouri, California, and other states often dismiss cases for similar violations of their rules. In the Buckley Cases, in 60 Ill. 252, the court say, among other things: "Appellant in each case has failed to prepare and file an abstract of the record, but there has been filed in each case a printed index to the transcript. We presume the attorney was aware of the rules of the court, and has intentionally disregarded them. As the cases have not been prepared as required by the rule, we decline to consider them, and affirm the judgments." And so we should be obliged to dispose of this case had it not been continued with the express understanding that it should be heard and decided upon its merits.

The case is fairly stated by both parties, and is substantially as follows: The defendant in error brought an action against the plaintiffs in error upon a bond given by them to the defendant in error in the sum of $5,000, conditioned that if the firm of Dawson & Hawes, who were the principals in said bond, and who had made a contract with the defendant in error to erect, build, and complete a two-story brick building for him, should well and truly perform said contract in all things, according to the specifications, the bond should be void; otherwise in force. The petition in the case alleged the making of said building contract, and the bond to secure the performance of the contract, and that said Dawson & Hawes proceeded to erect said building, but failed to comply

with the terms of the contract under which the building was to be erected, in that they built the walls of the cellar of said building of half-burned casing brick, and laid up the walls of the building with bank-sand mortar, whereas, by the terms of the contract, said cellar walls were to be built of arch hard-burned brick, and the walls were to be laid up with fresh lime and sharp-sand mortar. The petition further alleged that in consequence of the failure of said Dawson & Hawes to erect said building in the manner required by their contract in the particulars before stated, it fell down, and became entirely ruined, to the damage of the plaintiff $5,000, for which he asks judgment. In due time Halleck Bros. made answer in the case, setting up six defenses. Dawson & Hawes were not served with process, and did not make any appearance in the case.

The defendants Halleck Bros. made, in substance, the following defenses:

(1) They admitted the contract between Dawson & Hawes and the plaintiff in the action, Mr. Bresnahen, for the construction of the building, and also admitted the execution of the bond conditioned for the performance of the contract; they further admitted the allegations of the petition in respect to the character of the brick which were to be used in the construction of the cellar walls and the character of the mortar to be used in laying up the walls, as fixed by the terms of the building contract; they also admitted that Dawson & Hawes did construct the said building, but deny that they failed to comply with the terms of said building contract, in the respect set out in the petition; they admit that the building fell down, but deny that it fell in consequence of the failure of Dawson & Hawes to comply with the terms of their contract; they deny that any furniture or other property of the plaintiff was injured by the fall of the building.

(2) The second defense set up by the defendants is, in substance, that the plaintiff, when the building was in course of construction, made the payments therefor as provided by the contract, and when the building was completed that he accepted the same as completed under the contract, and remained in the same until it fell, without notice to Halleck Bros. of any objection on account of any supposed failure on the part of Dawson & Hawes to perform their contract. It is further al- ·

Halleck v. Bresnahen.

leged, in this defense, that, by the construction contract, disputes on account of imperfect construction of the building were to be settled by arbitration; wherefore, it is further alleged that the plaintiff waived his right to a strict performance of the contract, and by his acquiescence deprived the defendants Halleck Bros. of their indemnity as sureties, and of their opportunity to have any disagreement between Bresnahen and Dawson & Hawes adjusted by arbitration.

(3) The third defense is substantially the same as the second, except that it is alleged that the plaintiff paid the several sums to be paid by him under the contract, including the last payment, without insisting that said building was not completed according to the contract, although at the time of making the last payment, it is alleged, the plaintiff well knew of the defects in the building of which he complains in his petition, from which it is concluded that plaintiff accepted the building, and waived strict performance, etc.

(4) The fourth defense alleges that after the completion of the building, differences arose between Dawson & Hawes and the plaintiff as to the manner in which said contract had been performed, which were submitted to arbitration, pursuant to the contract, an award made thereon, and performed, from which it is concluded and averred that there was an accord and satisfaction as to all such matters of difference in respect to the construction of said building.

(5) The fifth defense is, in substance, that at all times from the completion of the building until shortly before the commencement of this action the said Dawson & Hawes each were solvent, but since, and before the bringing of this action, became insolvent; wherefore the defendants say that by virtue of the several acts of the plaintiff, as aforesaid, the defendants were led to suppose that plaintiff had waived or settled his objections to the want of strict performance of the building contract, and that Halleck Bros. were thereby prevented from seeking their indemnity against said Dawson & Hawes before the accruing of their several insolvency.

(6) Halleck Bros., as a sixth defense, aver that after the making of said building contract, and during the construction of the building, the plaintiff, without the consent of Halleck Bros., agreed with Dawson & Hawes that the work of the construction of said building should be otherwise than as prescribed by the specifications of the contract, and that the building should not have been constructed until after the tenth of November, 1875, and that the building was constructed in a manner otherwise than according to the contract, and was not completed until after November 10, 1875, without the consent of the defendants Halleck Bros.

Upon the issues thus formed, the case came to trial in Albany county, where it had been taken by change of venue by Halleck Bros., and was tried by the court, without a jury, on the thirtieth and thirty-first days of March and the first and second days of April, 1881. The plaintiff, to maintain the issues on his part, put in evidence the bond sued on and said building contract, and they were received without objection. The defendants Halleck Bros. then produced certain evidence. The plaintiff then furnished certain rebutting evidence. On the fourth day of August, 1881, the court announced and filed its decision, with findings of law and fact; to each and all of which findings, and the order for judgment thereon, the defendants excepted. Halleck Bros. then filed a motion for a new trial, on the fifth of August, 1881, setting forth 67 grounds therefor. Said motion for a new trial was overruled on the twenty-fourth day of August, 1881, to which Halleck Bros. excepted, and a bill of exceptions was allowed and signed on the said twenty-fourth day of August, 1881. At the February term, 1881, and on the second day of April of said term, an order was made and entered giving the parties until and including the first day of the next term of the court to reduce all exceptions to writing, which were taken on the trial of the cause. On the fourth day of August, 1881, the same day on which the findings and decisions of the court in the case were made and filed, judgment was entered in favor of Bresnahen and against Halleck Bros. for $5,000.

In examining the mass of matter contained in this record, we find that the merits of the case may be properly disposed of by deciding the questions involved in the motion to amend the answer, by adding what is called the seventh defense, and growing out of the alleged waiver of his rights under the bond sued by the defendant in error, as set forth in the second and third defenses. Upon the third day of the trial, and after the greater part of the evidence had been

Halleck v. Bresnahen.

introduced, the plaintiffs in error moved to amend their answer by adding the following at the end of it: "For a seventh answer thereto, defendants say that, after the making of said contract, and during the construction of the said building, the plaintiff, without the consent of these defendants, made payments to and for the use of the defendants Dawson & Hawes on account of the construction of said building in advance of the time specified in said contract for the payment" thereof. This defense was ably and thoroughly argued, and had it been pleaded in the right time and manner, and sustained by proof, it might have been a bar to the action. But to give plaintiffs in error a right to this proposed amendment to their pleading, at that stage of the trial, they should have shown affirmatively that they did not know of the defense before. For aught that appears in the record they may have known this before the trial. Counsel say in their argument in this court that they did not know it. But the record does not show that the court was in any way properly advised of that fact. On the contrary, the inference is strong from the cross-examination of Bresnahen, on the 215th page of the transcript, that plaintiffs in error knew of that defense before the examination of Bresnahen, for the attorney who conducted that cross-examination for them first disclosed in a question to Bresnahen that there had been a discount of $50. It was not Bresnahen who disclosed that fact to him. He must have learned it from his clients.

As to the alleged waiver, the district court found as a matter of fact that "the plaintiff neither excused nor waived a strict performance by Dawson & Hawes of the contract, nor induced the sureties to believe that he had so done or had waived, settled, or discharged any claim for the want of such performance." The question upon this finding is not whether it is sustained by a preponderance of the evidence, but whether it is so much against the weight of the evidence as, on the first blush, to shock the sense of justice. While it is true that there is considerable evidence on the question in favor of the plaintiffs in error; it is also true that there is strong evidence on the other side. The testimony of the defendant in error himself is very decided and positive, and it is sustained by part of the testimony of Durbin, and by other facts and circumstances in evidence. It is proved that he not only occupied the building for business, but that both he and his nephew slept in it from the time it was finished, and that they were lodging in it when it fell. These facts can hardly be reconciled with the belief that he knew how insecure the building was, owing to the bad material put in it by Dawson & Hawes. The testimony as to what was said and done by the parties, when Bresnahen objected to Dawson & Hawes putting poor brick in the building, and one of them promised him it should not be done, shows that he did not intend to waive his rights under the contract and bond. As to the bad mortar which, according to the testimony, more than the unsuitable brick, was the cause of the falling of the building, there is but little evidence to show that he knew its true character till after the building fell. He says positively that he did not. When a man contracts to build a house upon the land of another, of suitable materials and in a workmanlike manner, and violates his contract, either as to the work or materials, to the substantial injury of the other, the party injured may either refuse to pay the contract price of the building to the amount for which he is damaged, or he may pay for and take possession of the buildings, and then sue and recover of the builder the amount of his damages. And he can recover whether he knew of the breach of contract by the other party at the time of payment or not. In neither case is there any waiver of his rights under the contract. Where there is a bond, as in this case, the only limit to his right to recover is the five years prescribed by the statute of limitations. The theory of the plaintiffs in error seems to be that, though this may be true of the principals, the sureties on the bond were released by the conduct of the defendant in error, and especially by his making the last payment and occupying the building without objection till it fell.

An examination of the testimony of E. F. Halleck, one of the sureties and plaintiffs in error, leads us to the conclusion that he must have known quite as much about the materials that went into this building as Bresnahen. He was an experienced builder, had built several houses in Cheyenne, and knew what kind of materials were necessary to the erection of a good building there. He was there about the time this building was begun,

Halleck v. Bresnahen.

when it was finished, and immediately after it fell, and probably during the time of its construction. He furnished part of the materials, and was interested to have the final payment made by Bresnahen to Dawson & Hawes, so that he might get his money for the materials he had furnished. He seems to have been there at that time for that purpose, and, as a matter of fact, did then get his money. It may be that his interest in the building was one reason for executing the bond. The Hallecks, as sureties on the bond, were deeply interested, pecuniarily, in a proper construction of the building. They were under obligation to know the character of the materials used in its construction, and had ample opportunities of knowing all about it. The doctrine of constructive notice and of waiver applies to them quite as strongly as to Bresnahen. The reasonable inference from their conduct is that they consented to the final payment in order to get their share of the money, and took their chances of whatever might afterwards happen from its bad construction.

At the close of their argument upon the defense of waiver, plaintiffs in error claim, but do not very strongly insist, that defendant in error is estopped by his conduct from recovering in this action. But an estoppel cannot be founded upon words, or acts, or silence, unless they were intended to lead the party who seeks to set up the estoppel to act upon them, and he did act upon them, and act to his injury. In this case no estoppel is pleaded, and none is proved. Or, rather, if there be any estoppel in the case, plaintiffs in error are estopped by their quiet acquiescence in Bresnahen's making the final payment to Dawson & Hawes, and their prompt action in taking their share of the money. Had they objected to that payment they might, perhaps, have made out an estoppel *pro tanto*.

For reasons suggested above, we decline going into any further discussion of this case. Before the close of the trial in this court the greater part of the errors assigned were either expressly or by implication abandoned. It is evident, from the argument upon the two principal defenses we have been considering, that plaintiffs in error relied principally upon them. Upon one of them, the defense of waiver, the argument was exceptionally lengthy, earnest, able, and determined. These two principal defenses

are so far decisive of the case that plaintiffs in error would be entitled to a reversal of the judgment, if they had sustained either of them. On the other hand, failing in both, they could not succeed, for they invoke the entire defense. But, be that as it may, this court, after careful consideration of all the errors assigned and insisted upon in argument, feels constrained to say that the court below committed, in the trial and decision reached in this case, no such error as can or ought to vitiate or reverse the judgment rendered below and now here under review.

The judgment of the district court, in overruling the motion for a new trial, is affirmed.

### NOTE.

#### ESTOPPEL—ACQUIESCENCE—SILENCE.

A party is not estopped by his silence, unless such silence influenced the conduct of the party claiming the estoppel. O'Mulcahy v. Knapp, (Minn.) 8 N. W. Rep. 906.

A property owner cannot stand by and see a contractor expend money in improving a street, and afterwards deny the right of the city to make the contract. Taber v. Ferguson, (Ind. Sup.) 9 N. E. Rep. 723; Ross v. Stackhouse, (Ind. Sup.) 16 N. E. Rep. 501.

A party is not estopped for remaining silent or inactive when he is under no obligation, legal or moral, to speak or act. Simmons v. Taylor, 23 Fed. Rep. 849; Perry v. Dow, (Vt.) 9 Atl. Rep. 12.

One permitting another to act on the faith of an understanding which he might have contradicted cannot afterwards dispute its truth. Buckstaff v. Dunbar, (Neb.) 17 N. W. Rep. 345.

One who stands by and permits a stranger to purchase property offered for sale, under foreclosure of a chattel mortgage, is estopped from afterwards claiming against such stranger that he had, at the time of such sale, a paramount claim on the property purchased. Miles v. Lefi, (Iowa,) 14 N. W. Rep. 233.

One who stands by and sees another, at great expense, divert the source of a stream, without objection, until the work is completed, will not be entitled to a mandatory injunction restoring the stream to its original channel. Slocumb v. Railway Co., (Iowa,) 11 N. W. Rep. 641.

If one stands by and allows another to purchase his property without giving him any notice of his title, a court of equity will treat it as fraudulent for the owner to afterwards try to assert his title. Gray v. Crockett, (Kan.) 10 Pac. Rep. 452.

One collaterally interested in the collection of an execution, who assents to the levy being made in a manner not in conformity with legal requirements, is estopped to say that the creditor was negligent in making the levy. Spaulding v. Town of Northumberland, (N. H.) 6 Atl. Rep. 642.

### Halleck v. Bresnahen.

One who attests a deed knowing its contents cannot afterwards stand by and see expensive work done under it on the premises, making no objection, and then assert an older adverse title in himself, and recover the premises in opposition to the deed to which his attestation gave authenticity and credit. He is estopped. Railway Co. v. Strickland, (Ga.) 6 S. E. Rep. 27.

Where a warehouseman ships wheat to a third party, without the consent of the owner, the latter is not estopped to claim damages for its conversion by such third party, unless he has, by his acquiescence in the acts of the warehouseman, led defendant to believe that the shipment was rightful. McBee v. Cæsar, (Or.) 13 Pac. Rep. 652.

In an action by the county against the sureties on the bond of the clerk of the district court to recover fees received by him, the fact that the board of supervisors had made settlements with the clerk acquiescing in his retention of the fees is no estoppel. Palo Alto Co. v. Burlingame, (Iowa,) 32 N. W. Rep. 259.

The silence of a party who sees a work advancing towards his land, which the builder evidently intends to construct across the land, is no ground of estoppel, as the party is not bound to complain until his rights are encroached upon. Stewart v. Stevens, (Colo. Sup.) 15 Pac. Rep. 786.

A plaintiff who allows defendant to erect a building across his right of way, without asserting his claim, is not thereby estopped from subsequently bringing suit to have the obstruction removed, where it is shown that defendant had full knowledge of plaintiff's claim to the right of way, and knew he did not intend to relinquish it. Schaidt v. Blaul, (Md.) 6 Atl. Rep. 669.

Where a party gives his construction to the terms of a contract, and the other party sits by, and hears this construction given, making no objection thereto, and knows the party so construing it would not enter into the contract except upon such construction, the party so sitting by is estopped from claiming any other construction. Flint v. Johnson, (Vt.) 9 Atl. Rep. 364.

Where a party, who has from time to time sold hides at a fixed sum, according to their weight, has discovered that on several occasions he has been cheated by the purchaser in falsely representing the weight of the hides, and with such knowledge has accepted in payment the amount tendered, without making claim for shortage, he will be estopped, in a suit brought to recover the amount due on later sales, and the shortage on former sales, from claiming such shortage. Reid v. Ladue, (Mich.) 32 N. W. Rep. 916.

The grantor of plaintiff was the owner of the property, while defendant was building his raceway, and knew he intended to take water from the stream, and did not object to it in any way. There was no element of fraud in the case, nor any evidence that plaintiff's grantor induced defendants to make the expenditure. Held, that plaintiff was not thereby estopped from asserting its riparian rights. Rubber Co. v. Rothery, (N. Y. App.) 14 N. E. Rep. 269.

A landowner, who stands by and acquiesces until a railroad company has expended money, and constructed its track across his land, so that the track at that point has become a part of its line, cannot maintain injunction against a corporation which has succeeded to its right and franchises, by purchase at foreclosure sale, without notice of any claim or objection on the part of such landowner. Railway Co. v. Smith, (Ind. Sup.) 15 N. E. Rep. 256.

Defendants purchased a lot situate on a raceway, and erected a factory thereon, with a view to operate the same with power drawn from the race. On proceedings to restrain such diversion, it appeared that plaintiff company and its grantors were engaged in selling and leasing hydraulic rights, and, though they knew of the erection of the mill, had not informed defendants of the want of title in them to the power. Held, that plaintiff's silence did not estop it from an assertion of its rights, as it might well have expected that defendants would buy or lease from it the amount of power they needed. Paper Co. v. Kelly, (Wis.) 35 N. W. Rep. 744.

The son of a member of a mutual relief association being in fact entitled to the whole of the fund payable on his father's death, his guardian, on making claim therefor, was informed by the president that only a part of the fund was due to the son, and that the balance belonged to another person, who had been named as a beneficiary. The guardian, in good faith, without disputing this, accepted the smaller sum, and signed a receipt in full. The remainder of the money was then paid to the person supposed to be entitled thereto. Held, that the guardian's passive assent to the payment of the balance to the wrong person did not amount to an estoppel, and that a suit might still be maintained by the son for the balance of the fund. Tyler v. Association, (Mass.) 13 N. E. Rep. 360.

A secured creditor of an insolvent debtor, who, as an attorney, advises a general assignment by the debtor, and does not present his claim, or demand an inventory or bond, but stands by, and suffers the assignee to manage the estate in a loose way, and to turn over the property to the debtor after a settlement with the other creditors on a basis of 50 per cent., and recognizes the assignment by accepting payments from the assignee as well as from the debtor, is estopped from asserting, as against the assignee, a claim for the balance left unpaid on his debt after crediting the payments on account of interest and the proceeds of several sales of the debtor's property made by him subsequent to the assignment. Cram's Appeal, (Pa. Sup.) 9 Atl. Rep. 282.

A husband conveyed certain personal property to his wife through the medium of a third person, and subsequently, with her knowledge, and in her presence, made an arrangement with defendant for a loan, to be secured by a mortgage upon the same property. She gave defendant no information of her ownership, and afterwards this mortgage, and the note secured thereby, were surrendered to her husband by defendant, and a new note and mortgage given for a larger amount to cover an additional loan, she being unaware of the latter transaction. Held, in a suit by her for conversion of the property by de-

Halleck v. Bresnahen.

fendant, who had taken possession for purposes of foreclosure, that she was estopped from setting up her title as against the first mortgage, but not as against the second. Tracy v. Lincoln, (Mass.) 14 N. E. Rep. 122.

Acquiescence for several years by a parent in the claim of adoption does not estop her from claiming the child on the ground that the order of adoption is invalid. Ex parte Clark, (Cal.) 25 Pac. Rep. 967.

The fact that before the purchaser at a sheriff's sale, or his grantees, has received a deed from the sheriff, a person claiming title through a conveyance from the judgment debtor has entered into possession and made valuable improvements, without objection by the purchaser at the sheriff's sale, or his grantees, is not sufficient to constitute an equitable estoppel against the latter. Leonard v. Flynn, (Cal.) 26 Pac. Rep. 1097.

Where a husband owns land and makes a deed absolute on its face, though intended simply as security for a loan, and his wife pays the debt and takes a warranty deed to the land in her own name, the husband, by permitting his wife to sell the land without objection, is estopped to assert any right to the property. Allen v. Cannon, (Utah,) 28 Pac. Rep. 868.

Where a water company, which has a license from the owner of land to enter thereon, and divert a given quantity of water from a stream flowing through it at a given place, afterwards claims the right to divert the same quantity of water at a different place, and the landowner looks on without objection until the water company has expended large sums of money in taking water from such place, he is estopped to deny its right to do so. 23 Pac. Rep. 808, modified. Curtis v. Water Co., (Or.) 25 Pac. Rep. 378.

Plaintiff sued defendants for deceit in inducing him to join them in organizing a community called "Faithists." Held, that plaintiff, being a man of ordinary intelligence and able to read the Oahspe, or Bible, and other writings of the society, by entering into the Holy Covenant, assisting defendants in organizing the community and its inner circle, and remaining with them for more than a year, and joining in their song services, is estopped from claiming damages for loss of time and humiliation. Ellis v. Newbrough, (N. M.) 27 Pac. Rep. 490.

Lands were granted to a school-district to be used for school purposes. Under a supposed license from its grantor, defendant entered and began constructing its railroad upon such lands. Shortly after, the school trustees, protesting that the school-district owned the lands, attempted to settle the latter with defendant, and, failing therein, built a fence around them, and notified the contractors not to enter; but the fence was torn down, and the railroad completed. Held, there was no acquiescence by the school-district to estop it from bringing ejectment. Railway Co. v. School-Dist. No. 22, (Colo. Sup.) 23 Pac. Rep. 978.

A land-owner signed, circulated, and presented a petition to the board of county commissioners under Laws Kan. 1887, c. 214, for the improvement of a county road contiguous to his land,

and continued to live in the immediate vicinity of the improvement during the time it was in progress, and was present on the work at different times. He knew that the petition was insufficient under the statute. It appeared that the improvement greatly enhanced the value of his property, much in excess of the tax or special assessment attempted to be imposed therefor. Held, that he was estopped from prosecuting an action to restrain the collection of such tax or special assessment. Stewart v. Hovey, (Kan.) 26 Pac. Rep. 683.

Appellees are not estopped to move to strike out the statement of facts for the insufficiency of the judge's certificate, because they were present when the statement was settled, and offered no other. King Co. v. Hill, (Wash. St.) 23 Pac. Rep. 926.

Where a tenant remains in possession of premises, and pays the rent up to a certain time, he cannot be heard to contend that certain acts of the landlord during that time deprived him of the beneficial use of the premises, and amounted to an eviction. Ralph v. Lomer, (Wash. St.) 28 Pac. Rep. 760.

Where the board of county commissioners make a contract for the improvement of a county road which involves the expenditure of more money than they have authority to appropriate for that purpose, and issue warrants therefor, the payment of these warrants will not be enjoined at the suit of tax-payers who, with knowledge of all the facts, petitioned that the road be improved, and permitted the work to be completed without objection. Travis v. Ward, (Wash. St.) 25 Pac. Rep. 908.

Where a patent issues to the person entering the land, "for the use of the heirs at law," of another, and is accepted and acquiesced in by him, he cannot afterwards claim the patent. Dawson v. Mayall, (Minn.) 48 N. W. Rep. 12.

Mere failure of a stockholder to object to void by-laws until an attempt is made to enforce them against him does not estop him, in the absence of a showing that others have been misled by his silence. Kolff v. Fuel Exchange, (Minn.) 50 N. W. Rep. 1036.

Though a wife allows her money to be invested in land in her husband's name, she is not estopped as against one who extends credit to her husband with such knowledge as to the actual ownership of the property as would put a prudent business man on inquiry. Chadbourne v. Williams, (Minn.) 47 N. W. Rep. 812.

A wife is not estopped from claiming stock and crops, the product of a farm owned by her, as against the creditors of her husband, because she allowed him to transact all business in respect of it, and to have it assessed for taxes as his. Hoag v. Martin, (Iowa,) 45 N. W. Rep. 1058.

Where the son of the payee of a joint note, on receiving payment of one-half from one of the makers, erased the name of such maker, as the attempted discharge of the note for part payment would not have bound plaintiff if he had made the erasure himself, he is not estopped to hold such joint maker because he failed to notify him that he repudiated his son's act at once, and be-

fore the insolvency of defendant's co-maker. Eldred v. Peterson, (Iowa,) 45 N. W. Rep. 755.

In an action to set aside a tax-deed for alleged defects, where it appears that for 28 years the owner paid no taxes on the land; that he watched the land and records, and consulted attorneys from time to time; that he knew of the proceedings resulting in the tax-deed to defendant, and of a suit by the latter against all having any interest in the land to quiet his title; that he knew of defendant's taking possession and cultivating the land; that his own title was not recorded,— he was estopped to assert any invalidity of the tax-title. Baird v. Ellsworth, (Iowa,) 47 N. W. Rep. 875.

Plaintiffs gave defendant credit in reliance upon his statement that he was the owner of a certain lot. The equitable title to the lot was in his wife, but she permitted the legal title to remain in her husband "because of business conveniences and considerations." Held, that the fact that the wife intended no fraud is no defense to an action by plaintiffs to subject the lot to the payment of their judgment, since, by permitting her husband to deal with the property as his own, she enabled him to commit the fraud, and she is therefore estopped from setting up her claim. Hopkins v. Joyce, (Wis.) 47 N. W. Rep. 722.

A land-owner, who employs real-estate agents to negotiate a sale of his land, authorizing them to get offers and report the same to him, who subsequently fixes a price which he will accept for the land, and who is afterwards informed by the agents that they have made a contract to sell at the price named, that the purchaser has made part payment, deposited the balance in bank subject to a deed, and taken possession of the land, is estopped from denying the agents' authority to make the sale by remaining silent two months thereafter, without informing the purchaser that he repudiates the contract. McWhinne v. Martin, (Wis.) 46 N. W. Rep. 118.

A person claiming title to an island through a patent of land on the opposite bank, who has exercised acts of ownership, is not, on the ground of non-claim, estopped to assert his claim against persons who have never been in possession, nor had title of record. Butler v. Railroad Co., (Mich.) 48 N. W. Rep. 569.

A widow is not estopped from claiming her dower because she acquiesced in the occupation of lands alleged to belong to her husband by the sons during her husband's life-time, and made no claim while they made valuable improvements; for at that time her dower right was inchoate, and could not be asserted. Rockwell v. Rockwell, (Mich.) 46 N. W. Rep. 8.

One who attends a meeting of the city council with knowledge of the fact that it has audited his claim against the city at a designated sum, and who makes no objection or protest against the passage of a resolution directing the recorder to draw an order in his favor for that sum in payment of the claim, and who accepts such order, and draws the money on it, is estopped from suing the city on the same claim. Davey v. City of Big Rapids, (Mich.) 48 N. W. Rep. 178.

A tax-payer will not be estopped from attacking

the validity of an election under the school laws appropriating money to certain school uses, on the ground that he stood by and saw liabilities for improvements incurred on the strength of such election, without objection thereto. Riggs v. Stephens, (Ky.) 17 S. W. Rep. 1016.

For several years before his death, J. had in this state three stallions of great value. He advertised them as his own, and, in every respect seemed to be the owner, and mortgaged two of them. Plaintiff lived in another state, and was at different times in the town at which J. kept the horses, but he asserted no interest in them until after J.'s death, when he claimed to own them. He had talked with one whom he knew to be keeping the horses, and sharing the proceeds of their services with J., but did not speak to him about the horses, and appeared to take no interest in them. Held, that plaintiff was estopped from claiming the horses as against the mortgagee. Wilson v. Scott, (Ky.) 15 S. W. Rep. 130.

The fact that defendants took possession of property after purchasing it, and made payments on their notes given for the price without objection as to alleged misrepresentations of the quantity and value of the property, would not estop them from alleging the same in an action on the notes, such conduct not having induced plaintiff to any action. Merrill v. Taylor, (Tex. Sup.) 10 S. W. Rep. 532.

P., as agent for H., sold certain land to C., taking notes therefor. By mistake an unpaid note was delivered by P. to C., and P., believing all the notes were paid, delivered the deed for the lands. Upon the discovery of the mistake, P. agreed with H. that he would be responsible for the unpaid purchase money, if it could not be recovered from C.; and H. took no steps to have the deed canceled, but acquiesced in the arrangement. Held, that one claiming under H. was estopped from claiming that no title passed under the deed, it being delivered by mistake. Crossland v. Powers, (Ark.) 13 S. W. Rep. 722.

Where a chattel mortgagee gives the mortgagor permission to sell the mortgaged property, and stands by, and, without setting up any claim, allows it to be sold to one having no actual notice of the mortgage, he will be estopped to deny the mortgagor's authority to sell. Benedict v. Farlow, (Ind. App.) 27 N. E. Rep. 307.

A partner whose representations of the value of a copartner's interest and silence as to a contingent claim of his own against said copartner on the purchase price of his interest have encouraged a creditor of said copartner to purchase his interest on execution, cannot, on accounting, object to a decree giving said interest (which is not sufficient to indemnify him) to the purchaser, on the ground that said contingent claim is entitled to priority. Gerard v. Bates, 26 Ill. App. 300.

When a wife, knowing that her husband has insured a horse as his own, makes no objection, and when judgment has been recovered on the premium note makes no objection to the levy on the horse as her husband's property, but signs an ordinary delivery bond as surety for her hus-

## Halleck v. Bresnahen.

band, and not till a week after the levy serves a notice on the constable, claiming the horse as her own, she is estopped to assert that claim. Peddicord v. Insurance Co., 26 Ill. App. 407.

Where, on a foreclosure sale, the mortgagee purchased the premises, and the mortgagors, being parties, do not appeal from the judgment and the proceedings thereunder, they are estopped, after six years, from questioning the regularity of the proceedings. French v. Powers, (N. Y. App.) 24 N. E. Rep. 296.

Where a bank collects checks payable to and indorsed in the name of plaintiff as a corporation, the bank is estopped afterwards to deny plaintiff's corporate character. Craig Medicine Co. v. Bank, (Sup.) 14 N. Y. Supp. 16.

Mere acquiescence by a party injured, in the erection of an elevated railroad, will not work an estoppel by which the former is deprived of his right to sue for damages thereby sustained, when it appears that the structure is one authorized by law, and one of which in itself the property owner cannot complain. Knox v. Railway Co., (Sup.) 12 N. Y. Supp. 848.

A judgment debtor, who, with his attorney, was present when a receiver was appointed in supplementary proceedings, and who made no objections thereto, cannot, two years afterwards, when his wife has become involved in litigation with the receiver, be heard to say that at the time of their institution the proceedings were barred by the statute of limitations. Bolt v. Hauser, (Co. Ct.) 10 N. Y. Supp. 397.

Where plaintiff, at the time, makes no objection to the sale of stock bought by his brokers on a margin, and subsequently receives back his note given to secure the margin, and asks for, receives, examines, and approves the statement of his account, and accepts a check in full settlement of the balance appearing due him, and afterwards acquiesces therein until the stock has greatly increased in value, he will be estopped to repudiate the acts of the brokers, and hold them for the advance. Gould v. Trask, (Sup.) 10 N. Y. Supp. 619.

A corporation is not estopped by failing to deny the right of its president to buy goods on its credit, where there was no evidence that it knew of such purchase. Lyndon Mill Co. v. Lyndon Literary & Biblical Inst., (Vt.) 22 Atl. Rep. 575.

Where defendant, who is manufacturing a patented article under an agreement with complainant, the patentee, attaches a patented improve-

ment to the manufactured article, which increases the profits, having first informed complainant that he should claim a certain part thereof as royalty, complainant is estopped by his silence from denying defendant's right to such royalty. Pressey v. Machine Co., (N. J. Err. & App.) 19 Atl. Rep. 618.

The plaintiff held land under an equitable title, which by 20 years' adverse possession had ripened into an absolute title. The holder of the record title conveyed a perpetual easement in the land, with the knowledge of the plaintiff, who received the consideration, and stood by without objection while large sums were expended in improving the easement. Held, that the plaintiff was estopped from asserting any title as against the easement. Martin v. Railroad Co., (Me.) 21 Atl. Rep. 740.

Where one under disability conveys land, receives the price, and then, after the removal of her disability, waits 15 years, without any attempt to disaffirm the deed until the land has become valuable by reason of large expenditures on it by other persons, a moderate amount of evidence will justify submitting to the jury the question whether she had such knowledge of the improvements as would estop her from disaffirming the deed. Logan v. Beaty, (Pa. Sup.) 21 Atl. Rep. 1083.

The fact that a *feme covert*, a grantee in an unrecorded deed, knew of a contract of sale by the grantor of the land conveyed to her, and made no objection thereto, will not work an estoppel, especially where it appears that she was ignorant of her rights, and there is no evidence of fraud on her part. Ray v. Wilcoxon, (N. C.) 12 S. E. Rep. 443.

The fact that a bond given by a married woman to secure the payment of money borrowed by the husband for his own use was given in 1884, and thereafter assigned to defendant, who sought to foreclose in 1889, and that plaintiff had not claimed that the money was not borrowed for her use, will not operate as an estoppel, especially when she did nothing to induce the defendant to take the assignment. Griffin v. Earle, (S. C.) 13 S. E. Rep. 473.

A remainder-man is not estopped by permitting improvements to be made by one who derives title through the life-tenant, without giving notice of his rights, where there is nothing to show any obligation to give notice. Stewart v. Matheny, (Miss.) 5 South. Rep. 387.