67   115
130   28,

## SUMAN ET UX. *v.* SPRINGATE.

CONTRACT.—*Pleading.—Presumption.*—A contract declared upon in a complaint is presumed, where the contrary is not alleged, to be merely verbal.

SUPREME COURT.—*Fact inferred from Special Finding.—Coverture.—Contract to Convey.— Specific Performance.*—In determining the law applicable to a special finding of the facts in a suit, the Supreme Court may infer any material fact which, though not specifically found, is reasonably deducible from the facts found, and which throws light upon the matter in controversy ; *e. g.,* the coverture of a party against whom specific performance of a contract is sought to be enforced.

SAME.—*Estoppel in Pais.*—A married woman is not estopped by matter *in pais* from asserting her title to real estate sought to be recovered from her.

SAME.—*Statute of Frauds.—Practice.*—An objection that a contract for the conveyance of lands, which is sought to be specifically enforced, is void by the statute of frauds, may be presented for the first time on the trial, without pleading the statute.

SAME.—*Payment.*—Mere payment of the purchase-money will not take a verbal contract for the conveyance of real estate out of the statute of frauds.

SAME.—*Lost·Deed.—Partition.—Agreement to Maintain.*—A married woman died intestate, seized in fee simple of certain real estate, and leaving· a widower, a son and two daughters, surviving her. The eldest daughter, in consideration of her agreement to maintain the father, received a con-·veyance from her father, sister and brother, in which his wife did not join, for their interest in the lands ; but, she becoming dissatisfied with the arrangement, her brother and sister agreed to take back their interest in the land, and to maintain the father therefor. Their deed to her being lost and unrecorded, it was agreed that a reconvoyance was unnecessary. Upon agreement between the brother and younger sister, that she should maintain the father,· he and his wife conveyed his interest to her.

The land being all the time in the possession of the older sister, her inherited interest and that conveyed to her by her father were subsequently sold on execution upon a judgment against her, to one to whom she ·and her husband subsequently quitclaimed *her interest.* Upon the death of the father, whom the younger sister had supported as she had agreed to, she brought an action against such purchaser, for partition, seeking to enforce the agreement of the older sister to reconvey, and on the trial the foregoing facts, and also the fact that all of such parties had notice of all of such contracts and conveyances, were found specially.

*Held,* that the purchaser was not estopped, and that the plaintiff can not recover.

From the Montgomery Circuit Court.

*P. S. Kennedy, W. T. Brush* and *E. C. Snyder,* for appellants.

*W. P. Britton* and *M. W. Bruner,* for appellee.

WORDEN, J.—This was an action by the appellants Mary E. Suman and her husband, against the appellee, Springate, for the partition of the half of a certain town or city lot, the plaintiff Mary E. Suman claiming four-ninths thereof.

The cause was tried by the court, who made a special finding of the facts and stated conclusions of law thereon, and rendered judgment for the defendant.

Errors are assigned upon the rulings of the court upon demurrers to some of the pleadings, and upon the conclusions of law stated by the court upon the facts found ; but the questions arising upon the pleadings and upon the facts found are much the same, and the entire, substantial

merits of the cause are involved in the facts found. We, therefore, think it unnecessary to consider separately the questions arising upon the pleadings.

If the conclusions of the law stated by the court upon the facts found are substantially correct, the merits of the case are with the defendant, and the judgment below should be affirmed.

The following are the substantial facts found by the court:

Prior to the year 1861, Hannah Hurley died intestate, seized in fee of the east half of lot number 108 of the original plat of the town (now city) of Crawfordsville, in the State of Indiana; she left, surviving her, her husband, John F. Hurley, and three children, viz.: Julia V. McCullough, George D. Hurley and Mary E. Wilson, now Mary E. Suman, the female plaintiff. The surviving husband took the undivided three-ninths ($\frac{3}{9}$) of the half lot mentioned, and each of the children inherited the undivided two-ninths ($\frac{2}{9}$) of the half lot. On December 31st, 1861, John F. Hurley, by his warranty deed, conveyed his undivided one-third of the half lot to Julia V. McCullough, and on May 13th, 1865, the said Mary E. Wilson and George D. Hurley, by their quitclaim deed, for the consideration expressed therein of $500, but really in consideration that Julia V. McCullough would keep and maintain their father, John F. Hurley, conveyed to said Julia V. McCullough their undivided interest in the half lot, being four-ninths ($\frac{4}{9}$) thereof. The said George D. Hurley, at the time of his conveyance, had a wife, who did not join in the deed. By these deeds and by inheritance said Julia V. McCullough became and was possessed in fee of the entire half lot. The deeds were duly recorded.

In the latter part of the year 1872, the said Julia V. McCullough became dissatisfied with the arrangement whereby she was to take charge of, care for, and support the said John F. Hurley, and about December 25th, 1872, she and

the said George D. and the said Mary E. met together and agreed that said George D. and Mary E. would take charge of, and support and care for, the said John F. Hurley; that at this time it was agreed that, in consideration of the said George D. and the said Mary E. taking charge of the said John F., as aforesaid, they, the said George D. and Mary E., were to have back from the said Julia V. the interest in said half lot which they had theretofore conveyed to her, being four-ninths ($\frac{4}{9}$) thereof; Julia agreed with them that they might have it back; she then told them that their deed to her was lost and she could not learn that it had been recorded; and, as the wife of George D. had not joined therein, she did not think it was necessary for her to reconvey to them, and in this the said George D. and Mary E. acquiesced, and no deed was executed by her to them. At this time, December 25th, 1873, in pursuance of the agreement, said John F. went home with the said George D., and remained with him for a time, the said George D. supporting and caring for him; that on November 17th, 1874, the said George D. and Mary E. Suman (late Mary E. Wilson), entered into an agreement whereby the said George D. and wife conveyed to Mary E. Suman the undivided one-third of two-thirds of said half lot, for the consideration expressed, that said Mary E. Suman would keep and maintain the said John F. Hurley during the remainder of his natural life; that she did so keep and maintain him; that said Julia V. McCullough knew of this last named conveyance before and at the time it was made, and made no claim to the interest deeded by the said George D. to the said Mary E.; that said Mary E. knew that there had been no reconveyance to the said George D. of his former interest by the said Julia V. McCullough; that, on the 25th of February, Samuel D. Smith, sheriff of Montgomery county, conveyed by sheriff's deed, as the property of Julia V. Mc-

Cullough, sold on an execution issued on a valid judgment against her, the undivided one-third, and the undivided one-third of two-thirds, of the half lot mentioned, to the defendant, William H. Springate; that on the same day, February 25th, 1876, the said Julia V. McCullough and Bayamus McCullough (her husband we suppose) released and quitclaimed, by deed, to the defendant, Springate, their undivided interest in and to the half lot mentioned; that, before and at the time of this last named conveyance to said Springate, the latter had notice that the plaintiff Mary E. Suman claimed the undivided four-ninths ($\frac{4}{9}$) of said half lot by virtue of the agreement aforesaid between the said Mary E. Suman (then Wilson), George D. Hurley and Julia V. McCullough, whereby the said George D. and Mary E. were to take care of and support the said John F. Hurley, and were to have back the interest in said real estate theretofore conveyed by them to the said Julia V. McCullough; he also knew that George D. and Mary E. did support and maintain the said John F. during the remainder of his natural life, until his death in 1874; he also knew of the conveyance from George D. and his wife to Mary E. Suman. The defendant, about the time, but after he took the conveyance from Julia V. and Bayamus McCullough, proposed to Mary E. Suman to purchase from her her interest in the half lot in question, and, during negotiations looking thereto, he said to her that he would pay her rent on her interest in the premises; that neither the plaintiff nor the said George D. Hurley has ever had any possession of the premises, but the possession has all the time, up to the purchase by Springate, been in said Julia V. McCullough; and that the property is not susceptible of division.

The court stated the following conclusions of law upon the facts found:

" That as there was no possession of the land in contro-

versy by the said Mary E., and no agreement on the part of said Julia V. to convey any interest in the land in controversy to the said Mary E. or George D., but that it was only agreed that there was no necessity for such conveyance, the said Mary E. has not shown such a case as would entitle her to a specific performance of the contract between herself and the said Julia V. McCullough, and that, therefore, she is not entitled to such performance, as against the defendant, William H. Springate, and that the said Springate, by virtue of the sheriff's deed to him, and the quitclaim deed to him of said Julia V. and Bayamus McCullough, is the owner in fee of the east half of lot No. 108, etc., subject to the inchoate right therein of Frances Hurley, wife of George D. Hurley. The court therefore finds for the defendant."

It is not stated in the special finding, that Julia V. McCullough, at the time she entered into the contract with George D. Hurley and Mary E. Suman, by which the latter persons were to take care of and provide for John F. Hurley, and to have back the interest in the lot which they had theretofore conveyed to Julia, was a married woman; but there is a strong inference, arising from the facts found, that she was such. She is called Julia V. McCullough, in naming the surviving children of Hannah Hurley. From this it is to be inferred that she bore the name of McCullough, at the time of the death of her mother, Hannah Hurley. After the making of the contract above mentioned, she joined Bayamus McCullough in making a deed to the defendant for their interest in the half lot in question. Why should Bayamus have joined in the deed, unless he was her husband? He does not appear to have had any interest in the property, otherwise than as her husband; and unless she was such there was no necessity, or indeed propriety, in his joining her in the deed. If she was then the wife of Bayamus, whence she

took the name of McCullough, it is reasonable to suppose that the relationship of husband and wife commenced when she took the name of McCullough, running back to the time of the death of her mother, and covering the period when the contract in question was made.

If we may assume, as a fact found, that at the time of the making of the contract mentioned, Julia V. McCullough was a married woman, the case is entirely free from difficulty. She could make no contract for the conveyance of her real estate by which she would be bound, nor could she convey the same except by an instrument in which her husband should join. Nor could she be estopped by matter *in pais* to set up her title. *Stevens* v. *Parish,* 29 Ind. 260; *Shumaker* v. *Johnson,* 35 Ind. 33; *Behler* v. *Weyburn,* 59 Ind. 143. In this view she could join her husband in a conveyance to the defendant of whatever interest she had in the half lot; and this would leave no right in the plaintiff that she could in any way enforce.

But, lest there be some misapprehension as to the supposed coverture of Julia V. at the time of the making of the contract in question, we will consider the case as if she had then been a *feme sole.*

The agreement entered into about December 25th, 1872, between Julia .V. McCullough, George D. Hurley and Mary E. Suman seems from the finding to have been, that the latter named persons were to take care of and provide for John F. Hurley, and were to have back from Julia V. the interest in the half lot which they had theretofore conveyed to her; and it was supposed that no deed was necessary in order to transfer it back. For the purposes of the decision we will put the most favorable construction for the plaintiff upon the finding, and regard it as found that Julia V. agreed to convey it back. George D. and Mary E. performed their part of the agreement; they may be considered as having paid the purchase-money.

But the agreement might be regarded as having been made by parol, it not being found or shown to have been in writing. No possession was taken or delivered under it. No such part performance has been had as will take the case out of the statute of frauds. But the appellant insists, that, as the statute of frauds was not pleaded, the objection was waived. We are of opinion, however, that the objection that the contract was within the statute could be made at the trial without having pleaded the statute. *McMillen* v. *Terrell*, 23 Ind. 163.

But the appellant insists, that the consideration for which Julia V. was to convey back the interest mentioned was of such a character, being the support and maintenance of John F. Hurley, for the remainder of his life, that its pecuniary value was not and could not be estimated or ascertained, and that in such case specific performance will be decreed, notwithstanding the statute of frauds; and he cites a paragraph in Hilliard on Vendors, p. 156, which seems to sustain the position.

The case referred to by the author cited is that of *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279. There, two brothers owned a farm, which, for some years, they occupied jointly. Afterward, one of them having become subject to severe attacks of epilepsy, and thereby incapacitated from labor, as well as requiring watchful care and attention, he agreed with the other brother that the latter should provide for and attend to him during his life, and, as compensation therefor, should have all his personal and real property. Possession was taken and retained, and improvements made, under the contract. It was held by the Assistant Vice-Chancellor, that specific performance could be enforced. Some stress is laid upon the fact that possession had been delivered and taken under the contract; but it may be inferred from other parts of the opinion, that the same result would have followed had possession not been taken.

That case differs from the one before us in this, that in this case no-possession has been delivered or taken under the contract, nor have any improvements been made. We can not agree that the mere payment of the purchase-money, in whatever way it may be paid, will take a case out of the statute of frauds. In the case of *Sands* v. *Thompson*, 43 Ind. 18–24, we quoted the following passage from Chancellor KENT, which will bear repetition :

" I agree with those wise and learned judges, who have declared that the courts ought to make a stand against any further encroachment upon the statute, and not go one step beyond the rules and precedents already established."

It is also insisted, that as Julia V. McCullough had notice of the execution of the deed by George D. Hurley to Mary E. Suman, and stood by and made no claim to the interest thus attempted to be conveyed, she is estopped to set up a claim, and that the estoppel affects a purchaser from her with notice of the plaintiff 's claim. But the finding shows that Mary E., at the time she took the conveyance from George D., knew that Julia V. had not reconveyed to George D. The facts were as well known by Mary E. as they were by Julia V. There could, therefore, be no estoppel. *Fletcher* v. *Holmes*, 25 Ind. 458 ; *The Greensburgh, etc., Turnpike Co.* v. *Sidener*, 40 Ind. 424.

In any aspect in which we can view the case, we are of opinion, that, upon the special finding, the plaintiff Mary E. Suman has no title to any part of the property, nor any right thereto which she can enforce; and therefore that the court did not materially err in the conclusions of law stated.

The judgment below is affirmed, with costs.