D. E. RUSSELL and others *vs.* WISCONSIN, MINNESOTA & PACIFIC RAILWAY COMPANY.

August 28, 1888.

**Sale—Executory Contract for Indefinite Quantity—Acceptance of Part.**
—Where the defendant agreed generally by parol to take railroad ties of the plaintiff, but no definite amount or number were specified, the acceptance of a certain number actually delivered by the plaintiff cannot be held to obligate the defendant to receive any more.

**Same—Statute of Frauds.**—A parol contract to furnish ties to the amount of $50 or more in value is not a contract for work and labor, but for the sale of goods and chattels, and within the statute of frauds.

**Same—Action for Damages—Pleading and Proof.**—Under a general denial of the allegations in the complaint which set forth a parol agreement and part-acceptance thereunder, the plaintiff is obliged to prove both contract and acceptance in order to make out a case.

Appeal by plaintiffs from an order of the district court for Hennepin county, *Hicks,* J., presiding, refusing a new trial, the action

having been· dismissed at the trial, on defendant's motion, at the close of plaintiffs' evidence.

*Finch, Shearer & Morphy*, for appellants.

*J. D. Springer*, for respondent.

VANDERBURGH, J.   It is alleged in the complaint that the plaintiffs agreed to furnish to the defendant, on its line of road, "a large quantity" of ties, and that defendant "agreed to accept and pay them 34 cts. each for all ties which they could get out and deliver" to the company.   It is further alleged that the plaintiffs went on and delivered ties along the defendant's road, of which 1,385 were duly inspected and paid for.   They claim that 4,893 ties in all were delivered, and they seek to recover for the balance, which defendant has refused to accept and pay for.   The answer admits the corporate existence of defendant and the receipt of 1,385 ties furnished by the plaintiff, and denies all other allegations of the complaint.   The evidence in support of the contract was as follows:   One of plaintiffs testified:   "I went to Mr. Hatch, [defendant's agent,] and asked him if we could sell him some ties.   He asked me how many we had.   I told him I did not know.   I presumed two or three thousand, and could get more—quite a number more.   Mr. Hatch said, ' We will take them at the same price as the Minn. & St. Louis Co.' "   He had previously inquired of Mr. Hatch whether he would want ties, and knew that the defendant was constructing a branch from Eagle Lake to Mankato.   On cross-examination he testified:   "I went to Mr. Hatch, and asked him if he could take the ties now that I had asked him about," and that Hatch inquired, " 'How many have you ? '   I said I did not know;   'I think two or three thousand, probably, and I can get more.'   He then said, 'I will take them.' "   "*Question*. Take what ?   *Answer*. Take the ties.   *Q*. What ties ?   *A*. The ties we had and were to get.   *Q*. All the ties you had and could get out ?   *A*. No, sir; not all that we could get out.   I inferred that he meant that he would take probably three or four thousand ties; not to exceed that.   *Q*. There was no limitation fixed, was there ?   *A*. Nothing definite.   He did not name any definite number, nor did I."   The ties which plaintiffs counted on were in the main such as they expected to receive from their customers upon accounts due them.

"*Q.* Were they actually cut and manufactured? *A.* There were some ties cut and manufactured. *Q.* A certain number? *A.* I can't specify any certain number; I never saw them. I don't know how many there were." It appears that plaintiffs had delivered on the line referred to, on the 11th day of October, 1886, ties to the number of 1,385, which were then, upon inspection, accepted by the agent of the defendant, and paid for by Mr. Hatch on the 20th November following, at 34 cents per tie. Plaintiffs had in the mean time caused to be hauled along the line of the road the balance of the ties for the price of which this suit is brought, but were notified by Mr. Hatch, when he paid them for the others, that he would accept no more at that price. Upon this evidence the action was dismissed by the trial court, on defendant's motion.

1. Plaintiffs' principal contention is that the contract was taken out of the statute of frauds by reason of the delivery and acceptance of the ties paid for. The statute provides that every contract for the sale of any goods to the value of $50 or more shall be void unless a note or memorandum of such contract is made in writing, or unless the buyer accepts and receives part of such goods. The acceptance and receipt here meant must refer to the goods contracted for. The acceptance of a part stands for the acceptance of the whole, so as to perfect the contract as an entirety, subject to the fulfilment by the seller of the other conditions of the contract in respect to delivery, quality, etc., (2 Story, Cont. § 1459,) so that, in determining in any particular case what is the effect of an acceptance, we must necessarily look to the terms of the verbal contract, and, if the contract is not made out, or it does not appear thereby what number of articles or amount of goods was intended to be purchased, the acceptance of some of the goods negotiated for or contemplated by the parties to the sale will not avail to bind the purchaser as to other goods subsequently delivered but not accepted, because the terms of the contract must determine the obligation of the purchaser as to the amount purchased or ordered. 1 Reed, St. Frauds, § 288; Browne, St. Frauds, § 335. It is manifest that the evidence relied on in this case to establish an agreement between the parties in respect to the quantity of ties to be furnished is entirely inadequate for such purpose. The

plaintiffs did not agree to furnish any, and they were in doubt how many they might be able to control. The number is not agreed on, nor could it be made definite under the agreement. The defendant did not order or agree to take any definite number; nor "all they could get out;" nor ties for any part of the line; nor all that the company might require; nor anything of the kind. The plaintiffs "inferred" that Hatch meant "that he would take probably three or four thousand; not to exceed that." It is obvious that the defendant could not, under the terms of the alleged agreement, compel the delivery of any more ties by plaintiffs. In all cases like the present it is essential to establish a contract complete in its terms in respect to the goods intended to be purchased, and then an acceptance by the buyer under and in pursuance of it. Under the evidence in this case, which, upon the most favorable construction, only tends to show that defendant promised to take or ordered a considerable but indefinite number of ties, it cannot be claimed that its acceptance of the number inspected, received, and paid for bound it to take any more.

2. The contract was not for the labor and skill of the plaintiffs in preparing or manufacturing the ties, but to furnish such as they might have or procure. It was a contract for the sale of goods and chattels within the statute of frauds. *Brown* v. *Sanborn*, 21 Minn. 402, and cases cited.

3. Under the general denial the plaintiff was obliged to prove a contract and an acceptance under it. If it appears affirmatively on the face of the complaint that a contract is verbal, and within the statute, it would be demurrable unless the payment of earnest-money or a part-acceptance of the goods sold was also alleged, and we know of no reason why, under our system of pleading, these allegations may not be met by a general denial. The question of the legal sufficiency of the evidence to make out a case under the pleadings was properly raised on the motion to dismiss the action, which was properly granted in this case.

Order affirmed.