## WILLIAMS–HAYWARD SHOE COMPANY v. BROOKS, ET AL.

STATUTE OF FRAUDS — PLEADING — EVIDENCE — SALES — CONTRACTS.

1. In an action on a contract for the sale of goods, a defendant may take advantage of the statute of frauds by objecting to parol evidence to prove the contract which he has by his answer denied, although he has not specially pleaded the statute.

2. A delivery of goods to a carrier is not sufficient to take a parol contract for the sale of goods out of the statute of frauds.

3. Where a contract is for articles coming under the general denomination of goods, wares, and merchandise, the vendor being at the time a manufacturer, and also a dealer in them as a merchant, or, so dealing, has them manufactured for his trade by others, and the vendee being also a merchant dealing in and purchasing the same line of goods for his trade, of which fact the vendor is aware; the quantity required and the price being agreed upon, and the *goods contracted for* being of the same general line which the vendor manufactures, or has manufactured, for his general trade as a merchant, requiring the bestowal of no peculiar care or personal skill, or the use of material or a plan of construction different from that obtaining in the ordinary production of such manufactured goods for the vendor's general stock in trade — the contract is one of sale, and within the statute of frauds, although the goods are not *in solido* at the time of the contract, but are to be thereafter made and delivered.

4. Where an oral contract for the sale of goods is entire, and suit is brought upon it as such, it is not error to exclude testimony that a part of the goods were specially manufactured, such evidence being offered to show that the contract was one for work and labor and not for sale.

[Decided April 4, 1901.]

ERROR to the District Court, Sheridan County, HON. JOSEPH L. STOTTS, Judge.

Action for the recovery of the price of goods alleged to have been sold and delivered to the defendants. On

the trial the defendants objected to the proof by parol of the contract on the ground that the contract was within the statute of frauds, and that there was no note or memorandum signed by the party to be charged. Certain testimony was excluded which was offered to show that the contract was for the manufacture of goods, and therefore not within the statute. Judgment was for the defendants. Plaintiff prosecutes error. The facts are stated in the opinion.

*Appelget & Mullen*, for plaintiff in error.

Findings of fact must be made upon the issues made by the pleadings, and every finding not so founded is a nullity. (Newby v. Myers, 24 Pac., 971; Dalton v. Rentaria, 15 *id.*, 37; Goldsmith v. Elwar, 50 *id.*, 867 ; Maynard v. Locomotive, 47 *id.*, 1030; Fiske v. Casey, 36 *id.*, 668.) To give a defendant a right to a new defense under an amendment to the answer, made after the evidence is in, he should show affirmatively that he did not know of the defense before. (Halleck v. Bresnahen, 3 Wyo., 73; Gilland v. U. P. Ry. Co., 6 Wyo., 185; Neimick v. Am. Ins. Co., 40 Pac. (Mont.), 597. The evidence offered and excluded would have shown the goods were specially manufactured, and that therefore, the contract was not within the statute of frauds. Where goods are manufactured upon a special order, though the order be a verbal one, and for a price exceeding $50, it is not within the statute. (Brown v. Widmer, 32 L. R. A., 593; Higgins v. Murray, 73 N. Y., 52; Baker v. Schenck, 28 Barb., 38; Bonnel v. Hearne, 12 Daly, 236; Abbott v. Gilchrist, 36 Me., 260; Crookshanks v. Burrell, 9 Am. Dec., 187; Spencer v. Cone, 42 Mass., 283; Allen v. Jarvis, 20 Conn., 28; Phipps v. McFarlane, 74 Am. Dec., 743; Hintz v. Burkhard, 43 Pac., 866; Puget Sound, etc., v. Rigby, 43, *id.*, 38; Shawn v. Van Nest, 25 O. St., 494.) The delivery to the carrier was a sufficient delivery to take the case out of the statute. (Meyers v. McMahon, 50 Mo. App., 18; Toms v. Whit-

more, 6 Wyo., 220; Bank v. McAndrews, 5 Pac., 879; Hayne v. Porter, 3 Hill, 141; Falvey v. Richmond, 87 Ga., 99; Kessler v. Smith, 42 Minn., 494; Whitman v. Strand, 36 Pac., 682. Wheelhouser v. Parr, 141 Mass., 593; Myers v. Collie, 56 N. W., 417.) Unreasonable delay in rejecting the goods is to be treated as an acceptance. (Spencer v. Hale, 30 Vt., 315.)

*W. S. Metz*, and *Clark & Breckons*, for defendants in error.

The making of the contract of sale having been denied by the defendants' answer, it was not necessary that they should plead the statute of frauds specially in order that it might be relied on as a defense, but they could take advantage of it by objecting to parol evidence offered by the plaintiff to prove the contract. (Birchell v. Neaster, 36 O. St., 331; May v. Rice, 101 U. S., 231; Dunphy v. Ryan, 116 *id.*, 491; Ontario Bank v. Root, 3 Paige Ch., 478; Popp v. Swanke, 68 Wis., 368; Brandus v. Newstadtl, 13 *id.*, 158.) The petition is not one for work and labor, and the evidence offered to prove the manufacture of the goods was inadmissible for that reason. But the transaction was a contract for the sale of goods, and as such was within the statute. (Pratt v. Miller, 109 Mo., 78; Meincke v. Falk, 55 Wis., 427; Mixer v. Howarth, 21 Pick., 205; Goddard v. Binney, 115 Mass., 450; Cooke v. Millard, 65 N. Y., 352; Lamb v. Crafts, 12 Metc., 353; Ency. L., Vol. 8, 1st. ed., 705–709; Flynn v. Dougherty, 14 L. R. A., 230, note; Pitkin v. Noyes, 48 N. H., 294; 2 Am. R., 218.) To take a case out of the statute, both acceptance and actual receipt of goods are necessary. A delivery to a common carrier does not constitute an actual receipt or an acceptance by the buyer. (8 Ency. L., 1st. ed., 730–735; Rogers v. Phillips, 40 N. Y., 579; Billin v. Henkel, 9 Colo., 394; Johnson v. Cuttle, 105 Mass., 447; Simmons Hd. Co. v. Mullen, 33 Minn., 195.

Potter, Chief Justice.

This was an action for the recovery of a balance due for goods alleged to have been sold and delivered to defendants by plaintiff. The defendants sued were Lyman H. Brooks, John H. Ivey, and Ida Ivey, partners under the firm name and style of J. H. Ivey & Co. The petition alleges that between August 20, 1897, and April 25, 1898, at the special instance and request of defendants, the plaintiff sold and delivered to them goods, wares, and merchandise, in the ordinary course of business, of the value and agreed price of $1,068.51, and that, by reason thereof, the defendants became indebted, and promised to pay to plaintiff the said sum ; and that of said amount, the sum of $558.99 remains unpaid. An account is annexed to the petition, embracing the various items of the alleged sales, and showing a charge as of April 25, 1898, amounting to $556.11, which is the sole matter in controversy, every other item in the bill apparently having been paid. The order relied on as the basis of that charge, as appears by the evidence, is claimed to have been given in November, 1897, and the goods were to be shipped in March, 1898.

Lyman H. Brooks, Ida Ivey, and the firm of J. H. Ivey & Company, filed separate answers. Brooks and Ida Ivey each denied membership in the firm, and denied having, at any time, purchased any of the goods mentioned in the petition, and having, at any time whatever, any business transactions with the plaintiff. The answer of the firm also denied that either Lyman H. Brooks or Ida Ivey were members of the partnership. As a second defense, it was alleged that all business transactions between the plaintiff and said firm had been fully settled, adjusted, and completed, and that the defendant was not indebted to the plaintiff upon its alleged cause of action, or any part thereof. For a third defense, it was averred as follows :

"This defendant further alleges that it has never purchased or received any goods, wares, or merchandise from

said plaintiff (a corporation) since the first day of October, A.D.,1897, and it denies that the said plaintiff ever sold or delivered to this defendant any goods, wares, or merchandise since said date, and it denies that it ever purchased from said plaintiff any of said goods mentioned in said petition since said date, and it denies that it ever purchased or agreed to pay to said plaintiff for any of said alleged goods.''

As disclosed by the testimony, plaintiff, a corporation, is engaged in the wholesale boot and shoe business at Omaha, Nebraska. On or about November 1, 1897, a traveling salesman of the plaintiff visited Sheridan, where the defendant firm conducted a mercantile business, and solicited their order. The salesman testified that Mr. J. H Ivey went with him to the hotel, examined his samples, and gave him an order for goods which he, the salesman, put down upon a written statement or memorandum describing the various items, with the price opposite each item. When the statement or order was offered in evidence, the defendants made the following objection : ''Defendants object to the admission of Exhibit 'A,' for the reason that the contract is within the statute of frauds ; that the same is a verbal statement, not signed by the defendants, or either of them, and in no way can bind them, and is void ; and for the further reason that it is incompetent, irrelevant, and immaterial.'' The total amount of the order was $789.20, and the statement thereof so offered in evidence was not signed by either of the defendants. No other writing or memorandum in writing showing the order or contract for the sale was produced. In the following April the plaintiff shipped the goods by rail to the defendants ; but the latter refused to receive or accept them, and, in fact, did not take the goods from the depot, and never did accept them. Indeed, upon the trial it was admitted ''that the goods are at the depot, and that the firm of J. H. Ivey & Co. refused to receive them from the depot, and never have received the goods from the station at Sheridan, and have never accepted them, and have paid no part of the purchase price.''

The court found that neither Lyman H. Brooks nor Ida Ivey were members of the firm of J. H. Ivey & Co., but that said Brooks had so held himself out as such a member as to be liable to creditors. The court further found among other things that the defendants had not received or accepted the goods, nor paid any part of the purchase price thereof; that no written contract of sale or purchase or note or memorandum thereof had been made or executed by the defendants or either of them. Thereupon the law was found to be with the defendants, and judgment was rendered accordingly, and against the plaintiff for costs. A motion for new trial having been filed, it came on for argument, at which time, at the request of defendants, they were permitted " to amend their answer by adding thereto the defense of the statute of frauds in accordance with the facts proved " which was thereupon done, and the motion for new trial overruled. An exception was duly preserved to the ruling permitting the answer to be amended, and to the overruling of the motion for new trial.

It is contended on behalf of plaintiff in error that the finding of the court relating to the making of the contract was without the issues in the case, as the statute of frauds had not been pleaded; and that it was error to allow an amendment after judgment and after motion for new trial had been filed, for the reason that the facts upon which the amendment was based were within the knowledge of defendants during the trial; and counsel refer to Halleck v. Bresnahen, 3 Wyo., 73, and Gilland v. U. P. Ry.Co., 6 Wyo., 185.

We think it unnecessary to consider the error assigned as to the allowance of the amendment. In any event it was harmless. The original answers in this case amount to a denial of the contract of sale set up in the petition, and when the plaintiff attempted to prove the sale, or the contract therefor, the defendants interposed an objection on the grounds of the statute of frauds.

The authorities are not entirely harmonious upon the question of the necessity of a defendant pleading the statute

of frauds as new matter, in order to render it available as
a defense.  It is held by some courts that non-compliance
with the statute can only be taken advantage of by specially
pleading it, and that a failure to do so operates as a waiver
of its benefits.  Whether the peculiar language of our
statute making the contract void, would of itself require a
different ruling we need not discuss, as we think the decided
weight of authority, under statutes variously worded, as
well as the sounder reason, sustains the rule that when
defendant, by his answer denies the contract, the burden
of proving it is cast upon the plaintiff, and he is therefore
required to maintain his case by competent evidence, and
as oral evidence of a contract within the statute would not
be competent, the defendant may avail himself of its priv-
ileges by objecting to such evidence at the trial.  (Phillips
on Code Pl., 334; Browne, Stat. of Frauds, 511; 9 Ency.
Pl. & Pr., 709, and cases cited; Feeney v. Howard, 79
Cal., 525; Wiswell v. Teft, 5 Kan., 263; Powder River
L. S. Co. v. Lamb, 38 Neb., 339; May v. Sloan, 101 U.
S., 231; Ontario Bank v. Root, 3 Paige, 478; Popp v.
Swanke, 68 Wis., 368; Brandus v. Newstadet 13 Wis.,
158, Bonham v. Craig, 80 N. C., 224; Birchell v.
Neaster, 36 O. St., 331; Suman v. Springate, 67 Ind.,
115; Allen v. Richard; 83 Mo., 55; Buttemere v. Hayes,
5 M. & W., 456; Eastwood v. Kenyon, 11 Ad. & E.,
445; Chickering v. Brooks, 61 Vt., 554; Hotchkiss v.
Ladd, 36 Vt., 593; Talbot v. Bowen, 1 A. K. Marshall,
436; Wynn v. Garland, 19 Ark., 23; Billingslea v. Ward,
33 Md., 48; Ruggles v. Gatton, 50 Ill., 412; Whyte v.
Arthur, 17 N. J. Eq., 521; Walker v. Hill, 21 N. J. Eq.,
191; Reid v. Stevens, 120 Mass., 209; Metcalf v. Bran-
don, 58 Miss., 841; Russell v. Wis. M. & P. R. Co., 39
N. W., 302; 39 Minn., 145; Cosand v. Bunker, 50 N.
W., 84 ( S. D.); Tatge v. Tatge, 34 Minn., 272; Taylor
v. Allen, 40 Minn., 433; Fontaine v. Bush, *id.*, 141;
Amberger v. Marion, 4 E. D. Smith, 393; Gibbs v. Nash,
4 Barb., 449; Smith v. Fah, 15 B. Mon., 443; Wildbahn
v. Robidoux, 11 Mo., 660.)

We do not regard this doctrine so much as an exception to the general rule, as sometimes stated as a rule in itself. It is no more an exception than any other rule affecting this subject upon a different state of facts. Several rules in this connection, applied to varying situations, are well established by precedent, and it can hardly be accurately said, that one is more general than another. For instance, if the complaint or petition shows a contract sued on to be within the statute, and to be oral, and there is no allegation of any other sufficient authentication thereof, such as part performance, execution and the like, a demurrer will lie to the plaintiff's pleading. Where the defendant admits or fails to deny the contract set up by the plaintiff, the statute is not available unless it is specially pleaded; and this is said to be so for two reasons: (1) the contract being admitted, the plaintiff is not required to prove it, and (2) the defendant, by admitting the contract, and not pleading the statute, is held to have waived the protection of the statute. Phillips on Code. Pl., 334.

In Feeney v. Howard, *supra*, the supreme court of California said that "to require the defendant to show affirmatively the invalidity of the plaintiff's contract would be out of harmony with the general rules of pleading and practice," and again, " Under our system the pleader is to allege facts only, avoiding matters of evidence on the one hand and matters of law on the other; and when he states a fact once, either affirmatively or negatively, it is sufficient for the pleading. Therefore, when the plaintiff alleges a contract which is either stated or presumed to be in writing, it is sufficient for the defendant to deny such contract. Having denied it, he is not required to state affirmatively that it was not in writing, or to refer in his answer to the law which makes it invalid."

The statute of limitations which is not available under a denial differs from the statute of frauds in this: the latter affects a primary right — the right to performance — while the former relates to the right to *enforce* performance; and these two rights " originate at different times.

The right to performance is coeval with the making of the contract, and operates anterior to the time for performance. The remedial right does not arise until there has been a breach of the contract." Phillips on Code Pl., 336.

Mr. Phillips in his valuable work on Code Pleading, has, in a foot note, learnedly discussed the subject of pleading in relation to the statute of frauds, and asserts that the only logical method of asserting the statute, is by objection to parol evidence in support of an issue as to the existence or the terms of a contract coming within its provisions. The author recognizes the authority of precedent requiring a special plea of the statute when the contract is admitted, but he considers that requirement to be at variance with the principles of the science of pleading, as he views the real purpose of the statute to be the exclusion of oral testimony on the trial to prove a contract subject to its provisions. Phillips on Code Pl., 335, Note.

No doubt a defendant must in some manner assert the statute in order that he may claim its benefits; but he does so when he objects to the introduction of parol evidence offered as proof of a contract within the statute which in his pleadings he has denied. We can perceive no sound reason why he should be required in addition to a denial of the contract to set forth in his answer the evidence upon which he will rely in support of his denial. Indeed the evidence will not be his. Even should he specially plead the statute, he could avail himself of it by an objection to the testimony on the part of the plaintiff. Affirmative proof on his behalf might not be, and, usually at least, would not be demanded from him. It is true that the statute is in one sense a shield which a party may use or not for his protection; but he does use it when he denies the contract sued on, and seasonably objects to oral proof upon the ground that the contract belongs to the class required by the statute to be in writing. That would not be the case under the statute of limitations. No denial could put the right to sue on

account of lapse of time in issue, unless indeed the cause of action should, upon its face, be barred, and the petition should contain allegations to show that the statute had not run. The reason for the apparent difference in the case of the two statutes is therefore obvious. But further discussion is unnecessary. In our opinion the weight of authority is overwhelming in favor of the rule that a defendant may take advantage of the statute of frauds by objecting to parol evidence to prove a contract, which he has, by his answer, denied.

It is, however, contended that there was a delivery and acceptance of the goods within the meaning of the statute. It was admitted on the trial that the defendants had not accepted the goods. But the admission did not go further than the law does. A delivery to a carrier may be a sufficient delivery on the part of the vendor in performing his part of a contract for the sale and delivery of chattels; but his act alone cannot operate to take a case out of the statute. It is well settled that such a delivery is insufficient to take a parol contract for the sale of goods out of the statute of frauds. The statute requires that the buyer must receive and accept the goods. Something is to be done on his part. There may be receipt without acceptance. Browne on Stat. of Frauds, 316. There should be both delivery and acceptance. *Id.* To constitute acceptance, there must be such conduct of the buyer in respect to the goods as to afford evidence that he has identified and recognized them as the goods which were to be his by virtue of the alleged contract. *Id.*, 316b. Acceptance is the receipt of the thing with the intention of retaining it. To amount to a binding acceptance of goods, under a contract of sale within the statute of frauds, the buyer's acts must be such as to show an intention to accept and appropriate the property as owner. Powder River L. S. Co. v. Lamb, 38 Neb., 339. The following authorities are directly in point, and sustain the proposition that the mere delivery to a carrier, in a case like this, does not constitute the receipt and acceptance

28

required by the statute of frauds.   Johnson v. Cuttle, 115 Mass., 449; First Nat. Bk. v. McAndrews, 5 Mont., 251; 5 Pac., 279; Rogers v. Philips, 40 N. Y., 519; Billin v. Henkel, 9 Colo., 394; Simmons Hardw. Co. v. Mullen, 33 Minn., 195; Browne on Stat. Frauds, 327b.   No special authority to the carrier to accept the goods for the defendants was shown; and the only authority it possessed was that which it had as a carrier of goods delivered to it for shipment in the ordinary course of business.   It is clear that the receipt of the goods by the carrier did not operate as an acceptance of them for the defendants so as to validate the parol contract.

Error is assigned upon the exclusion of certain testimony, which, it is insisted, would have established that the goods were manufactured specially for the order of defendants, and that the contract would thus be taken out of the statute.   We understand the contention to be that the excluded testimony would have shown the contract to have been one for work and labor and materials as distinguished from a contract for the mere sale and delivery of goods.

The witness Charles S. Hayward, manager for the plaintiff corporation, had testified that the order of defendants was received from the plaintiff's traveling salesman, and was thereupon asked the following question: "State if you had the goods on hand at the time the order was received."   An objection to the question was sustained, and the plaintiff offered to prove by the witness that they did not have the goods on hand at the time of the order.

In a letter introduced in evidence from J. H. Ivey to the plaintiff written after the goods had been shipped, the following language was used:    "I countermanded the goods long before they could have been cut."   The witness Hayward was interrogated on behalf of the plaintiff as to the significance of the word "cut" in relation to the boot and shoe jobbing trade.   Objection being made, plaintiff offered to prove, "that the term 'cut' has a spe-

cial application with reference to a special order of goods, and that the goods were, after said order had been received by plaintiff, provided specially for defendants." In passing it may be said that the latter part of the offer went beyond anything called for by the question which was, "What is the meaning of the word?" The objection was sustained. The testimony of the witness was taken by way of deposition, and his answer to the question as written down was as follows: "On orders that are taken several months in advance of shipment we make them up special, and the application of the word 'cut' doubtless as referred to in this letter, was that he claimed to have countermanded them before the goods had been started in the works or cut."

The witness was also asked the following question: "State if any of the goods described in the order received from Mr. Rand (the salesman), and attached to his deposition as Exhibit 'A' were made specially for this order." The offer of proof was "that 75 per cent of the goods in the order given by J. H. Ivey & Co. to Mr. Rand were made specially for the order referred to." Objections to question and offer were sustained. The answer as taken down was, "Very largely. At least 75 per cent of them."

The only item of testimony received without objection having any bearing upon the question is the following in the deposition of the same witness: "The order was received in the regular course of business in the fall of 1897, and the order for the goods was placed in the house, and the goods manufactured and shipped to J. H. Ivey & Co., in the spring of 1898."

There appears to be no reference in the testimony of Mr. Rand, the salesman who took the order, to identify it as a contract for the manufacture of any of the goods, or for the bestowal upon them of any work and labor on the part of plaintiff. Neither does the order, as made out by such salesman, and attached to his deposition contain anything to indicate that the order or contract contemplated a future manufacture of the goods; or that they were of a

peculiar character or class desired specially by him as distinguished from goods ordinarily sold by the plaintiff to other dealers.

The statute applicable to this case provides that "any contract for the sale of any goods, chattels, or things in action for the price of fifty dollars or more, shall be void, unless; First— A note or memorandum of such contract be made in writing and be subscribed by the party to be charged thereby; or Second — Unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action; or Third — Unless the buyer shall at the time pay some part of the purchase money." R. S., Sec. 2954.

In substance that was the early English Statute, and the same as adopted generally in this country. An excellent review of the cases showing the development of judicial construction of the statute in respect to the kind of contract coming within its provisions is to be found in the case of Meincke v. Falk, 55 Wis., 427. The subject is also quite exhaustively treated in Browne on Statute of Frauds, 299–310. It has become thoroughly settled that a contract for the sale of goods is within the statute notwithstanding that it may be executory; and it is equally well settled that a contract for work and labor is not within the statute. The difficulty lies in attempting to draw a line of distinction between the two classes of contracts, in the case of an article of manufacture.

In Mixer v. Howarth, 21 Pick., 205, Shaw, Chief Justice, said, "When the contract is a contract of sale, either of an article then existing, or of articles which the vendor usually has for sale in the course of his business, the statute applies to the contract, as well where it is to be executed at a future time or where it is to be executed immediately." The same distinction is made in Goddard v. Binney, 115 Mass., 450, where it is said "that a contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the

time or not, is a contract for the sale of the goods, to which the statute applies. But on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute. See also, Lamb v. Crafts, 12 Metc., 353; Gardner v. Joy, 9 Metc., 177.

The rule announced in New Jersey is "that when a contract is made for an article not existing at the time *in solido*, and where such article is to be made according to order, and as a thing distinguished from the general business of the maker, then such contract is, in substance and effect, not for a sale, but for work and materials." Finney v. Apgar, 31 N. J. L., 270. The Wisconsin court in the case of Meincke v. Falk, *supra*, approved the Massachusetts rule, saying, "We are inclined to think that the rule announced by Chief Justice Shaw, *supra*, and followed in Goddard v. Binney, 115 Mass., 450, supported, as it is, by the New Jersey, Maine, and some of the New York cases, is in substantial harmony with the rule as finally settled in England prior to their recent statute, and hence is entitled to our confidence and respect."

In New York the distinction seems to be based upon the fact whether the property contracted for is in existence *in solido* at the time or not. Crookshank v. Burrell, 18 Johns., 58; Higgins v. Murray, 73 N. Y., 352; Cooke v. Millard, 65 N. Y., 359; Parsons v. Loucks, 48 N. Y., 17.

The Massachusetts rule is more generally accepted in this country. Flynn v. Dougherty, 91 Cal., 669; 14 L. R. A., 230; Hight v. Ripley, 19 Me., 137; Cason v. Cheely, 6 Ga., 554; Abbott v. Gilchrist, 38 Me., 260; Heintz v. Burkhard, 21 Or., 55, 43 Pac., 866; Ellis v. Denver L. & G. R. Co., 7 Colo. App., 350, 43 Pac. 457; Lewis v. Evans, 108 Ia., 296; Phipps v. McFarlane, 3 Minn., 109; Pratt v. Miller, 109 Mo., 78; 32 Am. St., 656. New Hampshire prefers a broader and more general rule than the one announced by either the Massachusetts or New York cases, viz.: "If the contract be substantially for the goods, it is within the statute whether they are

then manufactured or not; but it is otherwise if the contract be to manufacture and deliver the goods, that is, if the labor and skill of the seller are stipulated for, and make part of the contract.'' Pitkin v. Noyes, 48 N. H., 294; 2 Am. R., 218. In that case the contract was for a crop of potatoes to be raised by the vendor, and in concluding a discussion of the question the court said: '' Upon the whole, our conclusion on this part is, that as the question is a mixed one of law and fact, it will be proper to leave it to the jury, in view of all the circumstances of the case, to find whether the contract was essentially for the work and labor and materials of the defendant in raising the potatoes, so that he was bound himself to raise them; or whether it was substantially a sale of the potatoes, which he might raise himself, or procure by purchase or otherwise. If it was the former, it would not be within the statute of frauds; but if the latter, it would be.'' The opinion criticises the Massachusetts rule as not affording a very satisfactory distinction, for, as it is said, ''If it be of the substance of the contract that the manufacturer shall apply his own labor and skill to the manufacture of the goods for the buyer, who is not bound to receive any other, it can make no difference whether the goods are habitually made by such manufacturer or not. If he does habitually make such goods for sale, he may nevertheless contract to bestow his own labor and skill in making them for a particular person, and the real inquiry is whether, in a given instance, he has done so. In the absence of explicit and distinct terms, the circumstances may be such as to indicate clearly that the labor and skill of the particular artist were especially stipulated for, as in the case of an agreement to paint a portrait, to execute a marble statue or any other work of high art. * * * On the other hand, if the contract be for goods which are usually in the market, and there is nothing in the terms used or in the nature of the case to indicate that the labor and skill of the contractor were stipulated for especially, it must be deemed a contract of sale, and within the statute.''

The case of Pratt v. Miller, *supra*, is quite in point, although, in that case, the contract more clearly contemplated the manufacture of the goods than in the case at bar, and the plaintiffs declared upon an agreement for the manufacture of divers goods, wares, and merchandise. The subject of the contract was boots and shoes. Plaintiffs were wholesale dealers in that class of merchandise in the city of Boston, and they either themselves manufactured or had manufactured for them their stock in trade. The defendants, retail dealers at Holden in Missouri, gave the commercial traveler or solicitor of plaintiffs a verbal order for the bill of goods sued for; and the solicitor made a memorandum of the order in writing, signed it himself, gave a copy to defendants, and forwarded it to the plaintiffs, who thereafter proceeded to have the goods made. The Missouri Supreme Court approves the general rule as stated in Browne on the Statute of Frauds; viz., "that if the contract is essentially a contract for the article, manufactured or to be manufactured, the statute applies to it; but if it is for the manufacture, for the work, labor, and skill to be bestowed in producing the article, the statute does not apply. * * * The true question is, whether the essential consideration of the purchase is the work and labor of the seller to be applied upon his materials, or the product itself as an article of trade." Sec. 308, 308a. And, as determinative of the case then before the court the following rule was formulated : " Where a contract is for articles coming under the general denomination of goods, wares, and merchandise, the vendor being at the time a manufacturer, and a dealer in them, as a merchant, or, so dealing, has them manufactured for his trade by others; and the vendee being also a merchant dealing in and purchasing the same line of goods for his trade, of which fact the vendor is aware; the quantity required, and the price being agreed upon, and the goods contracted for being of the same general line which the vendor manufactures, or has manufactured for his general trade as a merchant, requiring the bestowal of no peculiar care, or

personal skill, or the use of material, or a plan of construction different from that obtaining in the ordinary production of such manufactured goods for the vendor's general stock in trade, the contract is one of sale, and within the statute of frauds, although the goods are not *in solido* at the time of the contract, but are to be there after made and delivered.'' The contract in that case was held to be a contract of sale and within the statute.

It will be observed that the rule thus announced in Missouri is substantially the one followed in Massachusetts, with the exception that its operation is confined to a condition of affairs found to exist in the case then under consideration; and, it may be remarked, to a condition such as we have in the case at bar.

In many cases it will not be difficult. to determine whether a contract be one of sale or for work and labor and materials by the application of the broad rule laid down in Browne on Statute of Frauds, and in Pitkin v. Noyes, *supra*. The facts may so clearly show that the contract is essentially either one for the article, or for work and labor as to require no statement of a more specific test. If a more specific criterion be wanted, we think as applicable to, at least, the great majority of cases the Massachusetts rule will furnish one fairly satisfactory. The rule announced in Missouri in Pratt v. Miller, *supra*, is still more specific, and is a conservative statement of the law peculiarly applicable to the facts in the case at bar. Tested by that rule, which we shall follow in deciding this case, the excluded testimony would not take the case out of the statute. Notwithstanding all that was offered in the way of proof, we would be constrained to hold the contract to be one of sale. Indeed the offer of proof was rather to show what was, in fact, done by plaintiff in the way of manufacture, than what was, in the first place, agreed to be done. No doubt, the offer as to the meaning of the word, ''cut'' employed in the letter of Mr. Ivey might have shown that the latter understood some of the goods had to be manufactured by some one;

but it would hardly have established a contract requirign their manufacture.

Again the offer was to show that only a part of the goods were specially manufactured. The contract was entire, and the suit is brought upon it as such. If to be performed at all by plaintiff, it was to be performed as a whole, so far as we can ascertain from the record; and it would not appear to be so divisible as to authorize a suit upon the part only to which the statute did not apply, had the law taken the contract as to a part of the goods out of the statute.

It may be observed also that plaintiff, in its petition avers that the goods were sold and delivered "in the ordinary course of business," thus seeming to indicate that the transaction was relied on as a mere sale of goods, wares, and merchandise.

We perceive no error in the record, and for the reasons stated the judgment will be affirmed.

CORN, J., and KNIGHT, J., concur. *Affirmed.*