[APRIL TERM. 1903.]

## TREGEA, ET AL., v. MILLS.

PARTNERSHIP—EVIDENCE TO ESTABLISH AS PARTNERSHIP PROPERTY LANDS HELD BY INDIVIDUAL PARTNERS—STATUTE OF FRAUDS—APPEAL AND ERROR.

1. In the absence of evidence that lands held in the names respectively of individual members of a partnership were finally paid for by the partnership, it is not inconsistent with individual and separate ownership that the funds for their purchase may have been originally supplied to the individual owners out of partnership assets.

2. Where, in a suit by a partner to wind up the affairs of a partnership, it is claimed that land standing in the name of another partner is property of the partnership, and its

sale by the receiver is sought, the proof to establish that fact must be clear, and must amount to more than a mere preponderance of the evidence.

3. The evidence examined and held insufficient to prove that land standing in the name of an individual partner belonged to the firm.

4. The defense of the statute of frauds must be asserted in some manner or it will be waived.

5. In a suit to wind up the affairs of a partnership and seeking the sale as partnership property of land held in the name of an individual partner, there was a demurrer by such partner on the ground of defect of parties, and that the petition did not state a cause of action, which was overruled, and an answer not setting up the statute of frauds in respect to the partnership agreement, but denying any agreement concerning the ownership of the land in question; and there was no objection to the introduction of evidence on the ground that the partnership agreement was not in writing; and the court found that defendant, who held the legal title, was the sole owner of the land, and no reference was made in the findings to the statute of frauds. *Held*, that, on error, the court is not at liberty to assume that the trial court decided the cause on the theory that the partnership contract was void because not in writing.

6. Under the appellate jurisdiction of the Supreme Court, such court does not pass upon the character or credibility of witnesses.

[Decided May 25, 1903.    On petition for rehearing, August 3, 1903.]                      (72 Pac., 578; 73 Pac., 209.)

ERROR to the District Court, Uinta County, HON. DAVID H. CRAIG, Judge.

The facts are stated in the opinion.

*J. H. Ryckman,* for plaintiffs in error.

· There is no evidence to support the decision of the trial court, and the decision is clearly contrary to law. If it is clear that the verdict is contrary to law and there is no evidence to sustain it, it is the duty of the court to set it

aside. (Marshall v. Rugg (Wyo.), 44 Pac., 700; Edwards v. O'Brien, 2 Wyo., 493.) And whether there is any evidence to support a judgment is a question of law, and where the bill of exceptions discloses all the evidence, and the Supreme Court, on an examination thereof, finds that all the facts which the evidence in any degree tends to prove, will not sustain the judgment, it must be reversed. (Wooley v. Staley, 39 O. St., 354.)

Furthermore, this is a suit in equity, and in equity appeals the Supreme Court will review questions of fact and decide for itself whether the evidence is sufficient to support the decision. (Miller v. Cook, 135 Ill., 201; Chase v. Hubbard, 153 Mass., 91; Yesler v. Hockstettler, 2 Wash., 349; 30 Pac., 898; 2 Pl. & Pr., 402.)

And will render such judgment as the lower court ought to have rendered. (R. S., 4265; Columbus, &c., Co. v. Simpson, 5 O. St., 251; Ins. Co. v. Church, 21 O. St., 499; Wagner v. Ry. Co., 38 O. St., 32.)

Neither a court nor a jury have any power to render a decision or verdict wholly unsustained by legal evidence. (Hammond v. Jewett, 22 Neb., 359; Helfreich v. Ogden City R. R. Co., 7 Utah, 186.) If court errs in applying the law to the facts, a new trial will be granted. (Yeoman v. Lasley, 40 O. St., 339; Marshall v. Rugg, 44 Pac., 700.) The appellate court will always examine the facts so far as is necessary to determine questions of law based upon them. (2 Pl. & Pr., 405, and cases cited.)

Where the conclusions of law are entirely unsupported by the evidence, the judgment must be reversed. (Duncan v. Wyatt, 48 Mo. App., 659; 3 Cyc., 351, and cases cited.)

It was not contended by counsel for the defendant in error, nor was the idea entertained by the court for a moment, that the testimony in the case taken together does not prove a partnership. Indeed, it was not even claimed there was any credible testimony to the contrary. The defendant himself admitted that he has always participated in the profits when there were any that were derived from

the land in controversy.   And it is a well established rule
of law that participation in the profits of a partnership
raises a presumption and makes a *prima facie* case of part-
nership.   (Parker v. Canfield, 37 Conn., 250; Way v.
Evans, 97 U. S., 3; Kelly v. Morris, 6 Pet., 622; 1 Jones
Ev., 48-54.)

The case, therefore, before the court is, was the District
Judge right when he held that the articles of partnership
existing in parol, the Statute of Frauds intervenes, and the
action cannot be maintained.   Our Statute of Frauds, Sec-
tion 2953, provides that every agreement or contract for
the sale of real estate or the lease thereof for more than
one year shall be void unless such agreement, or some note
or memorandum thereof, be in writing and subscribed by
the party to be charged therewith.   It cannot be contended
successfully that this statute applies.   (Bates v. Babcock,
95 Cal., 479.)

The settlement of partnership accounts, and the con-
version into money of the assets of the partnership, whether
real or personal, and their division among the partners, has
always been one of the functions of a court of equity, and
that court never stops to inquire into the source of the title
of such assets, or in whose name they are held.   The ques-
tion has frequently arisen in actions for the division of the
proceeds after a sale under such an agreement, and it has
been invariably held that the statute of frauds is no defense
thereto.   (Bruce v. Hastings, 41 Vt., 380; 98 Am. Dec.,
592; Benjamin v. Zell, 100 Pa. St., 33; Trowbridge v.
Wetherbee, 11 Allen, 361; Babcock v. Read, 99 N. Y., 609;
Coward v. Clanton, 79 Cal., 23; 21 P., 359; Reed on
Statute of Frauds, Sec. 727; Byers v. Locke, 93 Cal., 493.)

The same principles are applicable in an action to sub-
ject land which has become a portion of the assets of such
a partnership to a sale under the directions of a court of
equity, with a distribution of the proceeds thereof accord-
ing to the rights of the individual partners.   (Dale v. Ham-
ilton, 5 Hare, 369; Richards v. Grinnell, 63 Ia., 44; Bunnel

v. Taintor, 4 Conn., 568; Hunter v. Whitehead, 42 Mo., 524; Bissell v. Harrington, 18 Hun., 81; Holmes v. McCray, 51 Ind., 358; Coward v. Clanton, *supra*.)

The first question to be determined by the court was whether there was a partnership, and that fact could be shown by general evidence, and being shown, nothing remains for the court to do except to declare the lands in controversy to be partnership lands and to confirm the sale made by the receiver. (Bates v. Babcock, *supra;* Shæffer v. Blair, 149 U. S., 249; Williams v. Gillis, 75 N. Y., 201; Speyer v. Desjardines, 144 Ill., 641; Chester v. Dickerson, 54 N. Y., 1; Fountain v. Menard, 53 Minn., 443; Ludlow v. Cooper, 4 O. St., 1; Bunnell v. Taintor, 4 Conn., 568; Buffum v. Buffum, 49 Me., 108; Fairchild v. Fairchild, 64 N. Y.,471; Knott v. Knott, 6 Ore., 142; 2 Lindley Part., 643; Tenney v. Simpson, 37 Kan., 353; 2 Story Eq., Sec. 1207; Knauss v. Cahoon, 7 Utah, 185.)

There are three tests available to ascertain whether the real estate in dispute is partnership property: (1) Was it the intention of the parties that it should be partnership property? (2) Was it acquired with partnership funds? (3) Was it essential and was it used for the purposes and objects of the partnership?

Any one of these elements being proved, stamps the land as partnership property. In this case all three of these things concur, and thus our case is three times as strong as it need be to entitle the receiver to this order of sale and a judgment for the plaintiffs in error.

As against creditors, the question is whether the lands have been bought with partnership funds and for partnership purposes, but as between the partners the question is one of intention only, which may be manifested by acts and declarations and established by parol evidence. (Collner v. Grieg, 137 Pa. St., 606; Murrel v. Mandelbaum, 85 Tex., 22; Dupuy v. Leavenworth, 17 Cal., 262; Shanks v. Klein, 104 U. S., 18; 26 L., 635.)

Real estate purchased for partnership purposes with part-

nership funds and used as part of the stock in trade is to
be considered to every intent as personal property; not only
as between the members of the partnership and their cred-
itors, but also between the surviving partner and the repre-
sentative of the deceased. The holder of the legal title is
but a trustee for the partnership. (Pierce v. Trigg, 10
Leigh, 446; Tiedeman Real Prop., Sec. 245; 1 Parsons
Cont., 152; 1 Bates Part., Sec. 281; Green v. Green, 1 O.,
535; 13 Am. Dec., 642; McCormick's App., 57 Pa. St.,
54; 98 Am. Dec., 191; Goldthwaite v. Janney, 102 Ala.,
431; Bank v. Miller, 27 L. R. A., 449.)

Did the court have power to order a sale of the partner-
ship property in the hands of the receiver before the trial
of the issues? As a general rule it is clear that the court
has power to order a sale of the property in the hands of
its receiver whenever it considers such course necessary
for the best interests of all. (2 Story Eq. Jur., Sec. 1216a;
McLane v. Placerville, 66 Cal., 606; First National Bank
v. Shadd, 121 U. S., 74; Hoyt v. Sprague, 103 U. S., 613;
Mellen v. Moline Iron Works, 131 U. S., 352.)

While it is true that a partnership exists only where the
parties intend to enter into it, such intent is a legal intent
and may exist in the teeth of an express stipulation that the
parties do not intend to form a partnership. (Jones v.
Davis, 60 Kan., 309; Spaulding v. Stubbings, 86 Wis.,
255; Goldsmith v. Eicbold, 94 Ala., 116.) In all cases
where rights of third parties are not involved the contract,
whether express or implied, will be liberally construed so
as to effectuate the actual understanding and do justice
among them. (22 Ency. L. (2d Ed.), 27.)

The mere sharing of profits in the absence of any ex-
planation that they are shared otherwise than as partners
is sufficient to establish the partnership. (Meehan v. Val-
entine, 145 U. S., 611; Harvey v. Shields, 28 O. St., 319;
Beecher v. Bush, 45 Mich., 188; Richardson v. Hughitt,
76 N. Y., 55; Eastman v. Clark, 53 N. H., 276; Coward
v. Clanton, 122 Cal., 451; Hodgson v. Fowler, 24 Colo.,

278; Webster v. Clark, 34 Fla., 637; Dame v. Kempster, 146 Mass., 454.)

Counsel for defendant in their brief have raised for the first time in this case the point that plaintiffs allege that the partnership set out in the petition was a special partnership, and that a special partnership under Section 2491 of the Revised Statutes could not be formed by parol, and that the partnership claimed having been formed by parol, the petition states no cause of action.

But counsel for defendant fail to call the court's attention to Section 4494, which provides that no special partnership is formed until the provisions of the five sections preceding are complied with. It, therefore, follows that if a partnership were formed at all, and the statute in relation to partnerships had not been complied with; the partnership is a general one, and the allegations of the petition clearly show that it was not a special partnership under the statute that was attempted to be alleged, but a general partnership for the special purpose of ranching and stock raising. The word "special," as used in the petition, has reference to a partnership which is formed for a particular business or transaction. (22 Ency. L. (2d Ed.), 61; Anderson's L. Dict., p. 750.)

Counsel for defendant further contends in his brief that Mrs. Mills and Mrs. Tregea ought to have been made parties plaintiff with Tregea and the administrator, but Sections 3479 and 4694 provide otherwise, and expressly say that such joinder is not necessary.

The third point made by defendant in his brief is that if Mills ever agreed that his desert land entry should be partnership property, such agreement is void, and cites two cases, neither of which is in point.

A partner who takes title to land for himself, or for the benefit of his co-partner, which is paid for jointly, each contributing to the payment of taxes and the making of repairs, holds the interest of the other partner in trust, notwithstanding there are no written articles of co-partnership, and

the trustee, at the suggestion of his co-partner, takes a home-stead on the land and holds it until his death. (Nasholds v. MacDonell, 55 P., 894 (Idaho, 1898.)

A resulting trust arises in favor of one who pays the purchase money for land, the title to which is taken in another, and such trust may be established by parol. (Galbraith v. Galbraith, 190 Pa., 225; Roach v. Croume, 41 S. W., 86; Moore v. Moore, 74 Miss., 59; Condick v. Maxwell, 142 Mo., 266.)

Although a partnership as such cannot hold a legal title to land, it may in equity own real estate without reference to the title at law; it being of no importance who holds the legal title, or how he came by it, excepting so far as these facts express or reveal the intention of the partnership. (Pars. Part. (4th Ed.), Sec. 267.) Nor does it seem to be material in what manner or by what agency the land is bought or in what name it stands. Nor is it necessary that the trust in favor of the partnership should be expressed. (Pars. Part. (4th Ed.), Sec. 266; Rockefeller v. Dellinger (Mont.), 56 Pac., 822.)

A trustee who has accepted a trust will be estopped to set up title adversely to his *cestui que* trust. (11 Ency. L., 444.) ·

A trustee is estopped from denying the title of estate of the person for whose benefit it was created and for whose use he holds it. (Stirling v. Stirling, 79 N. W., 525.)

The defendant having participated in the profits of the land in controversy, and having always treated it as partnership property, is estopped to deny it now. (Bigelow Estoppel (3d Ed.), 573, 574.)

But we insist, further, that the defendant, Mills, having signed on the 19th of May, 1893, a mortgage, and conveying the whole of the land in controversy and procuring said mortgage to be signed not only by himself and his wife, but by B. F. Tregea and his wife and by E. S. Bisbing and his wife, such mortgage containing the recital that the mortgage is signed by others than those in whom legal title is vested, for the purpose of divesting their interest as part-

ners, is estopped to deny that the land in controversy was partnership land. (11 Ency. L., 400.)

Desert land entries are assignable. (1 Supplement R. S. U. S., 37; 940; R. S. U. S. 1891, pp. 940-44, Secs. 5, 7; Philips v. Carter, 67 P., 1031; 135 Cal., 604.)

A court of equity will not enquire into the source of partnership assets, and the defendant has not raised that question by his pleadings. But if the defendant had made such a plea and proved it, it is untenable and he cannot keep partnership property. (Brooks v. Martin, 2 Wall., 70; Mc-Blair v. Gibbes, 17 How., 232; Planter's Bank v. Union Bank, 16 Wall., 500; Tenant v. Elliott, 1 Bos. & P., 3; Sharp v. Taylor, 2 Phil., Ch. 801; Bruke v. Flood, 1 Fed., 548; Tel. Co. v. Ry. Co., 3 Fed., 427; Wann v. Kelly, 5 Fed., 584; Cook v. Sherman, 20 Fed., 167; Hazard v. Dillon, 34 Fed., 491; Robinson v. McCracken, 52 Fed., 730; R. Co. v. Durant, 95 U. S., 576; Pfeuffer v. Maltby, 54 Tex., 454; De Lion v. Trevins, 49 Tex., 88; Farmer v. Russell, 1 Bos. & P., 296; Gillian v. Brown, 43 Miss., 641; McDonald v. Lamb, 43 Pac., 348; Crescent Ins. Co. v. Baer, 23 Fla., 50; Manchester Co. v. Ry. Co., 66 N. H., 132, 590.)

*Beard & Ausherman,* for defendant in error.

The first point to which we desire to call the attention of the court is to the allegations of the plaintiff's petition. It is alleged in the first paragraph that, in the year 1879, a *special* partnership was entered into between Bisbing, Tregea and Mills, and in the second paragraph that this agreement was in *parol*. This statement is reiterated in the petition of the receiver.

A special partnership could not be formed under the laws of the State of Wyoming since 1877 by a parol agreement. (R. S., Secs. 2491-2 ; S. L. 1877, p. 84, Secs. 3, 4.)

The proof must be confined to the allegations contained in the pleadings. The petition in this case failed to state any cause of action, because it alleged the formation of a

special partnership by parol. Such a petition states no cause of action. (Prince v. Lamb, 128 Cal., 120.)

Another sufficient objection to the sufficiency of plaintiff's petition is that there is a defect of parties. Bisbing died, intestate, and a resident of a foreign state. He left no personal property in this State, and his estate owed nothing. This being the fact, his real estate descended to his heirs, subject only to be divested for the payment of his debts. There being no debts of the estate, the title vested in the heirs absolutely, and any action affecting that title required that they be made parties thereto. This was not done. For this reason alone the plaintiff's petition was properly dismissed.

Plaintiff states in his brief that this is an action "to wind up the affairs of a partnership dissolved by the death of one of the partners." To our minds, under the facts stated and admitted, it is in reality an action for partition.

If any copartnership, special or otherwise, existed between Bisbing, Tregea and Mills, it was dissolved by the death of Bisbing, and as his estate owed nothing, the title to his real estate passed absolutely to his heirs, and any action in relation to the same made it necessary that they be made parties to such action, especially so as it is alleged and is undenied that the copartnership owed nothing.

On the death of one owning real estate, and who dies intestate, the title immediately passes to his heirs, subject only to be divested for the payment of the debts of the deceased and expenses of administration.

The land in controversy in this action was all acquired from the Government of the United States after the alleged formation of a partnership. If any agreement to hold in partnership was ever entered into, as claimed, whether verbal or in writing, it was fraudulent and void. (In re Groome's Estate (Cal.), 29 Pac., 487; Thompson v. Doaksum (Cal.), 10 Pac., 199.)

So far as the order of sale of this land is concerned, no order of sale could properly be made until it had been found

to be property belonging to the alleged firm. That was the issue in the case.

A sufficient reason alone for the court to refuse to confirm the sale that was made was the inadequacy of the bid. It was but a little more than one-fourth of what plaintiffs alleged was a bona fide and standing offer in cash, only about one-fourth of the appraised value, and less than one-fourth of what the evidence shows the property to be worth.

*J. H. Ryckman,* for plaintiffs in error, on petition for rehearing.

.The plaintiffs in error are impelled to present this petition for a rehearing, especially for the reason that the case has been decided by the court upon a proposition that never arose in the court below, and upon a theory that never occurred either to the trial court or the counsel on either side of the case. It was tacitly conceded in the trial of the case below that the plaintiffs in error had a vast preponderance of the evidence in their favor, and in this connection it cannot well be helped being remarked that the trial judge said in passing judgment that there was no question in his mind but that there had been a partnership in the land in controversy as alleged in the petition, but that his court had no power, in the absence of a written agreement of partnership, to compel the defendant to convey, and that, therefore, he must decide adversely to the plaintiffs in error. It will be noticed, too, as confirmatory of this statement that counsel for the defendant in error, neither in oral argument before this court nor in his brief, even adverts to the insufficiency of the evidence to sustain the allegations of the petition. The learned counsel evidently took it for granted, as it was taken for granted throughout the case after the evidence was all in, that the vast preponderance was on the side of the plaintiffs in error. Counsel for the defendant relied upon the Statute of Frauds to defeat the case, and upon the fact that the land in controversy had been acquired from the United States with a view to its becoming partnership property upon the acquisition of title. If any intimation

had ever been made in the course of the trial below that the plaintiffs in error did not have a vast preponderance of the evidence, much more evidence would have been produced.

CORN, CHIEF JUSTICE.

This suit was brought by plaintiffs in error to wind up the affairs of the partnership of E. S. Bisbing & Co. by the sale of eight hundred acres of land in Uinta County, in this State, which is alleged in the petition to be the property, and the only property, of the firm. The defendant in his answer denied that the land was partnership property. The evidence showed, among other things, that the title of record to one tract of one hundred and sixty acres of the land was in E. S. Bisbing, to another of three hundred and twenty acres in plaintiff in error, Tregea, and to the remaining tract, of three hundred and twenty acres, in defendant in error, Mills. The court heard the evidence, found that Mills was the sole owner of the tract held in his name, that the plaintiffs had no interest therein, set aside a sale of the land made by a receiver appointed during the pendency of the action and gave judgment in favor of the defendant for costs.

A number of questions are discussed in the briefs of counsel, but we think it is apparent that if plaintiffs have failed to show by a preponderance of the evidence that the land was partnership property, there is an end of the case and plaintiffs cannot succeed in their action. It is primarily necessary, therefore, to consider the evidence bearing upon this question.

The evidence shows, and it is conceded by all parties, that Mills and Tregea, being sons-in-law of Bisbing, a partnership was formed between the three, about the year 1879 or 1880, for the purpose of ranching and stock raising. Their ranch was near Bear Lake, Utah. Tregea and Mills held title as tenants in common to a part of the land and Bisbing held title to the remainder, but it is conceded that

it was all the property of the partnership. The contract of partnership was never reduced to writing, but the arrangement was entirely verbal. While this partnership, as admitted by all the parties, was still in existence, they acquired the eight hundred acres of land in Wyoming which is involved in this suit. Bisbing entered one hundred and sixty acres as a homestead, and Tregea and Mills each entered three hundred and twenty acres as desert land, and they each subsequently obtained patents to their respective tracts. The lands are adjacent and were selected with a view of being used as one ranch, and subsequently they were enclosed by a common fence, a water right was obtained by E. S. Bisbing for the purpose of their irrigation and they were managed as one ranch, Bisbing conducting the business. In December, 1892, the Bear Lake land was sold, the proceeds of the sale being equally divided between the three, and in January following a notice was published of the dissolution of the partnership. There is some disagreement as to the intention in publishing this notice of dissolution. Bisbing died in December, 1900, but Tregea and Mills both testify in regard to it. About that time Mills became involved, and Tregea testifies that he, Tregea, had nothing to do with publishing the notice, but that it was done by Bisbing and Mills, in order, as far as possible, to protect the other members of the partnership from becoming involved in Mills' financial misfortunes, and that there was no actual dissolution. Mills, upon the other hand, testifies that while he was at the time financially embarrassed and the purpose was that his partners should not be in danger of any loss by reason of such embarrassment, yet the partnership was actually dissolved just as purported in the notice; that the Bear Lake property having been sold, there was little, if any, property belonging to the partnership; that during the spring he borrowed money to tide him over, by haying time he was on his feet again and that he and Bisbing met and agreed that they would again handle the Bear River land in partnership as before; that from the

dissolution in January up to this time no partnership was in existence. With this exception, however, up to this point the parties are substantially agreed as to the facts.

But Tregea and his wife and Mrs. Mills, the daughters of Mr. Bisbing, testify that the Bear River land belonged to the partnership. And Mills, upon the other hand, testifies as positively that the land itself was not, and never had been, partnership property, but that the partnership was only in the use of the land.

As tending to support plaintiff's position that the land was the property of the partnership, are the statements of Tregea and his wife and Mrs. Mills, that such was the fact, though none of them undertake to rehearse any conversation between the parties in which it was agreed that the land should become partnership property; and it is conceded that no such agreement was ever put in writing. Neither do they undertake to repeat any express admission by Mills that the land belonged to the firm. So that their testimony amounts to little more than that they received the impression from all the circumstances and it was their understanding that the land itself was owned in partnership. It is true the repeat a statement of Mills which they construe as an admission that it was partnership property. Their counsel had written Mills a letter demanding that he make a conveyance of the three hundred and twenty acres to which he held title. And he replied denying any partnership in the land. Mrs. Tregea states that when she saw him shortly afterwards she said to him: "How dare you deny partnership? and he said, I had to write that to Mr. Ryckman to make a point in law. I said, you know there always was a partnership, and he said, I do not want to sell now. I said, what excuse have you for not selling? and he said he did not want to sell." And when asked, "Did he or not admit or deny a partnership?" she replied, "No, he did not deny a partnership to me. He made that reply to save a point in law." Mr. Tregea states it as follows: "I asked him what he meant by writing a letter to Mr. Ryckman, my

counsel, denying a partnership in the land on Bear River, and he says: 'Frank, I don't deny a partnership to you. I wrote that way to guard myself against points of law if the case should come into court.'" The language of Mills' letter replying to the letter of plaintiffs' counsel was: "I do not wish to dispose of any property at present. I will here say as a fact the land in question was never owned by any firm. It always has been my private property and I deny that any partnership regards the ownership of this land ever did or now exists." His attention was not called to these conversations when on the witness stand and he made no denial or explanation of the language attributed to him. In a letter to Tregea and his wife, dated eight days after the date of his letter to Mr. Ryckman, and which it would seem was written prior to the conversation referred to, he says: "You write that you were amazed at my denial of a partnership in the Bear River lands. You should not be, for it is a fact that there is no legal or lawful partnership in the land in question, it never having been transferred. If it had been partnership land, neither you nor I could have mortgaged our respective pieces as we did some time back. Therefore, I could not admit any such thing to be a fact when it was not and does not exist, as the records would show. As to any arrangements between us as a family or otherwise, that is an entirely different matter and I shall carry out my part as agreed upon."

As tending to support the plaintiffs' case and their claim that all the land, including the three hundred and twenty acres held in the name of Mills, was owned by the partnership, is also the way in which the land was handled and the business conducted. Mr. Bisbing managed the business at all times up to his death in 1900 and, indeed, exercised substantial control of it, the other two partners being occupied in other employment. The land was enclosed by a common fence and there were no partition fences separating one tract from another. There was but one notice of claim for a water right for the entire body of land. Though this

fact is of small significance, as under the laws in force at
that time the lands to be reclaimed need not be designated,
and in fact were not designated, in the notice. And it was
signed by Bisbing personally, together with John W.
Stoner and Charles Deloney, the two latter thereby making
a claim for water to be applied upon land entirely uncon-
nected with that in controversy, and Mills and Tregea being
only mentioned in the notice as members of an association
of the five persons who were to construct the dam. It fur-
ther appears from the evidence, and it is not questioned,
that, though Mills and Tregea had title to three hundred
and twenty acres each and Bisbing to but one hundred and
sixty acres, yet after the expenses were deducted the pro-
ceeds were divided equally among the three and not accord-
ing to the acreage owned by each. This might perhaps be
accounted for upon the ground that Bisbing was entitled to
compensation for his personal services, though Mills does
not account for it in this way, but states that it was because
he was the senior member and the father of their wives
and they were willing to give him the better of it.

There is also some attempt to show that the expenses
of proving up on all the land was paid by the partnership
and that certain sheep were sold and the money devoted to
that purpose, but there is nothing very definite about the
evidence on this point. Mr. Bisbing attended to making
the proof for all the tracts and neither Tregea nor Mills
knew much about it. But Mills testified that he paid the
expense as to his tract out of his own pocket, having handed
the money to Mr. Bisbing for the purpose. One witness
testifies that in 1882 he was working for them on the Bear
Lake ranch when some sheep were sold; and that he under-
stood from the conversation of the parties that they were
in immediate need of money to prove up on the Bear River
land and that the sheep were sold for that purpose. But as
the proof was not made on any of the land for more than a
year after this, and the witness was only about thirteen years
of age at the time, knew nothing whatever as to whether

the money was actually applied to that purpose or not, or, if so, how the accounts of the individual partners were adjusted with reference to it, the testimony is not of much value. And, moreover, in the absence of any evidence, as in this case, that the lands were finally paid for by the partnership, it is entirely consistent with the individual and separate ownership of them that the funds for that purpose may have originally been supplied to any one or all of the owners out of the partnership assets. The same witness and two or three others testify also that they had heard statements from the three members of the firm, in substance, that they were partners in connection with both the Bear Lake and Bear River ranches; but they heard nothing having reference to the ownership of the Bear River property itself. And this is the substance of all the evidence adduced by plaintiffs to establish the joint ownership of the lands in question.

On the other hand, there are several facts which indicate a separate ownership of the several tracts, and that such was the understanding of the members of the firm. Mrs. Tregea and Mrs. Mills, in their petition for letters of administration upon the estate of their father, set out that he owned this one hundred and sixty acres of land, and there is no intimation in the petition that his estate was actually a one-third interest in the eight hundred acres. And Mr. Tregea had knowledge of the filing of this petition and of its contents, and acted with them in employing counsel and having it filed. They explain that it was set out in this way under the advice of their counsel and to avoid the expense and delay of having the partnership affairs administered in the probate court. And there is no reason to doubt the truth of this explanation. It nevertheless indicates very clearly that at this time, which was prior to the refusal of Mills to join in a conveyance of the land, they had no very definite understanding that all the land actually belonged to the partnership and not to the individuals in whose names it was held.

Furthermore, it appears in evidence that in 1892, Tregea being in need of money for his own purposes, the amount was secured by a mortgage upon his tract and not upon all the land or any other part of it. Bisbing and Mills and their wives joined in the mortgage, but not as part owners. It was with a recital that it was for the purpose of releasing and conveying any interest they might have or claim in the land by reason of the partnership existing between them and Tregea. And Mills explains that the agent, who negotiated the loan, knew of the close family and business relations between them and insisted it should be signed by the other partners, so that no complications might arise in case of a foreclosure; that this was the only reason why they signed it. In May, 1893, after the notice of dissolution was published, Mills had occasion to raise money for his own purposes and he likewise mortgaged his tract, no other part of the land being covered by the mortgage. Bisbing and Tregea and their wives likewise joined in this mortgage with the same recital, except that the partnership was referred to as the partnership *heretofore* existing. These loans were subsequently paid off by Treagea and Mills, respectively ,and had no connection in any way with the partnership business.

Moreover, one George Hall, a witness for the defendant, states that, in conversation with Mr. and Mrs. Bisbing, they told him Mills had mortgaged his part of the ranch—his three hundred and twenty acres—and gave him to understand that the individual partners owned their respective tracts. He said to them he supposed it was partnership property, like the Bear Lake land, but they informed him that it was only fenced together to curtail expenses, and that they were partners only to that extent. Mrs. Bisbing also stated that their taxes were not as heavy as the others. John Pope, another witness for defendant, also states that Mr. Bisbing, in the presence of his wife, told him that Mills had mortgaged his land over on the river. And in reply to his question, "Have you mortgaged the ranch?" Mrs.

Bisbing said: "No, he has mortgaged his own land. One hundred and sixty acres belongs to Mr. Bisbing and three hundred and twenty to Mr. Tregea." John Peters also testifies that Bisbing told him they were partners in the Bear Lake, but not in the Bear River, ranch; that each owned the part of the latter standing in his name. Pope also states that once when he was at work on the ranch Tregea pointed out to him the separate pieces owned by himself, Bisbing and Mills, respectively. Lyons, another witness for defendant, states that in 1883 Bisbing told him that each owned his own part of the Bear River land; that, in 1884 or 1885, Tregea spoke of selling his land; that he said that he had three hundred and twenty acres, that he could sell it, that it was his to sell.

Under this evidence, we think it is clear the plaintiffs cannot prevail in their suit. There is not only no preponderance of the evidence that the land in controversy was owned in partnership, but such preponderance is quite clearly against it. And in actions of this character the plaintiff to succeed must make out his case by something more than a mere preponderance of the evidence. It must be clearly proved. The sale of the land by the receiver could only convey the equity of the partnership and, upon the refusal, as in this case, of the holder of the legal title to convey, the purchaser must resort to some proceeding in the nature of a suit for specific performance to compel him to perfect the sale by a conveyance of the legal title. In such cases, courts of equity uniformly require that the proof shall be clear and satisfactory. (Dunn v. McGovern (Ia.), 88 N. W., 938; Wilmer v. Farris, 40 Ia., 309; Ralls v. Ralls, 82 Ill., 243; Wright v. Wright, 31 Mich., 380; Allen v. Fiske, 42 Vt., 462; Boggs v. Bodkin, 32 W. Va., 566.)

Ralls v. Ralls, *supra,* was in some of its features similar to the case under consideration and, in announcing their decision, the Supreme Court of Illinois say: "Keeping in view the rule, as announced so often by this court, that, in a proceeding of this nature, the proof must be clear, we have

looked into this record and fail to find proof sufficiently plain and clear to justify the conclusion that the individual lands of these parties were ever held as partnership property. It is true they were in partnership in the farming business, but the evidence that the lands were held in common is by no means satisfactory."

Upon all the facts, we are of the opinion that a decree confirming the receiver's sale, which would be in effect a decree requiring a conveyance of this land by the defendant, would do violence to this well established principle, and that the judgment of the District Court, setting aside the sale and dismissing the suit at plaintiffs' costs, should be affirmed.                                                   *Affirmed.*

KNIGHT, J., and POTTER, J., concur.

### ON PETITION FOR REHEARING.

CORN, CHIEF JUSTICE.

In this case we sustained the decision of the court below in rendering a judgment for the defendant, assigning as our reason that, in any view of the several legal questions presented, the evidence of the plaintiffs did not entitle them to a judgment. Their counsel now urges that the court below was of the opinion and it was conceded by counsel for the defendant that the evidence introduced by plaintiffs was full and ample to make out their case, but that the court held that the contract of partnership relied on was void because not in writing; that, if there had been any intimation that the evidence was insufficient, much more and conclusive evidence was accessible and would have been introduced on behalf of plaintiffs, and that, therefore, the case should be sent back, in order that they may have an opportunity to try their case properly and make their proof.

There is reason in the proposition that where a party, by an erroneous ruling of the court, has been misled into trying his case upon a false theory and has thereby been induced to omit the introduction of available evidence to es-

tablish his right of recovery, there should be a new trial upon the issues actually raised by the pleadings. But nothing of the kind appears from the record in this case, and we are necessarily bound by the record. It nowhere appears that the court found for the defendant upon the ground that the alleged contract was void under the statute of frauds, or that that defense was made in the court below. While the decisions are conflicting as to the proper method of presenting the defense of the statute, this court has decided, and it is the law that it must, in some way, be set up, or else it is deemed to be waived. (Williams-Hayward Shoe Co. v. Brooks, 9 Wyo., 433.)

The petition alleged that the partnership was entered upon pursuant to a parol agreement, and there was a demurrer upon the grounds of a defect of parties and that the petition did not state facts sufficient to constitute a cause of action. If it was attempted to take advantage of the defense of the statute by this demurrer, which does not appear, the decision of the court was against it, for the demurrer was overruled. The defense is not set up in the answer, but, instead, there is a specific denial of any agreement concerning the title or ownership of the lands. Neither was there any objection to the introduction of evidence upon the ground that the agreement was void because not in writing. And, finally, the court finds specifically that the defendant is the sole owner of the parcel of land standing of record in his name, and that the plaintiffs have no interest therein and there is no reference to the defense of the statute. Under these circumstances, we are not at liberty to go behind the record and accept the suggestion of counsel that the issue, which this court has deemed to be the controlling one in the case, is different from that tried in the District Court.

Counsel also calls attention to the fact that the plaintiffs, who, as he states, are personally known to some of the members of this court as people of high character and standing, testify positively that the lands in question were owned

in partnership.   And he complains that, under these circumstances, their testimony should be rejected as unworthy
of belief, or insufficient to establish the point in controversy.
It is familiar law that this court does not pass upon the
character or credibility of witnesses.   If it did, a majority
at least of its members would, from personal knowledge,
certify to the unimpeachable veracity and high character of
the plaintiffs who testify in this case.   But we do not conceive that the decision turns upon the honesty or credibility
of these witnesses.   They testify to their opinion or conclusion drawn from events and conversations reaching back
over a period of more than twenty years.   The other surviving partner testifies that he did not so understand the
terms of the partnership, and there is strong evidence that
the deceased partner did not so understand it.   In it all
there is nothing inconsistent with the entire candor and
good faith of all the parties in interest.   It is merely another illustration of the endless misunderstandings which
habitually arise out of verbal agreements, especially among
members of the same family.

All of the other grounds upon which the application is
based were sufficiently considered in the original opinion.

A rehearing will be denied.

KNIGHT, J., and POTTER, J., concur.