CHARLES SOECHTIG, Respondent, *v.* WALTER P. AMICK et al., Individually and as Copartners Doing Business as EASTERN STEAM SPECIALTY COMPANY AND AUTOMATIC CONTROL COMPANY, Appellants.

First Department, April 26, 1955.

*Cuthbert B. Caton* of counsel (*Wolfson, Caton & Moguel,* attorneys), for appellants.

*Herbert Edelhertz* of counsel (*Hilton Soba,* attorney), for respondent.

BASTOW, J. Defendants appeal from an order denying their motion for summary judgment dismissing the complaint in an action to recover damages for the alleged breach of a contract executed when plaintiff withdrew from a partnership.

It appears from the uncontradicted statements in the affidavits that plaintiff and defendants were partners in a firm which bought and sold engineering specialties. Differences arose between plaintiff and his fellow partners leading to a decision to dissolve the partnership. The partnership agreement provided that upon the voluntary withdrawal of a partner, he was to be paid the book value of his interest in the firm, without any allowance for good will. Valuation of plaintiff's interest was complicated by the presence among the partnership assets of shares of stock in a closely held corporation. These shares had no readily ascertainable market value and were held individually in equal amounts in the names of each of the four partners. Defendants wished to acquire this stock as well as the plaintiff's interest in the other partnership assets.

In order to avoid an accounting proceeding, plaintiff and defendants entered into an agreement providing for the withdrawal of plaintiff and the formation of à new partnership with defendants as copartners. By the terms of this agreement, the final book value of plaintiff's interest was left undetermined until the partnership accountants had made their audit at the end of the firm's fiscal year. In the meantime, plaintiff was to receive certain specified payments of his partnership interest, with the value of the final payment dependent upon the results of the audit. The present controversy between the parties hinges upon the construction of this paragraph of the agreement: " The book value of Soechtig's [plaintiff's] interest in the capital of said co-partnership, as of the close of business on March 31, 1952, shall be determined by financial statements to be prepared and certified by Emanuel Colodny & Company, certified public accountants, of Mt. Vernon, N. Y., *in accordance with the accounting principles heretofore followed by them in their audit of the books of said co-partnership,* and their written certificate as to such book value shall be conclusive on Soechtig and on the Continuing Partners." (Emphasis supplied.)

A financial statement was prepared and certified by Emanuel Colodny & Company, the partnership accountants, and sent to the plaintiff. Plaintiff was paid the book value of his interest as shown by the statement with checks marked " Final payment on account of Partnership interest." Plaintiff then brought this action for breach of contract alleging that the financial

statement prepared by the partnership accountants did not correctly reflect the full book value of his interest in the partnership; that he requested the defendants to furnish a full accounting of the book value of his interest as provided by the agreement; and that he was refused such an accounting. The complaint demands damages for $10,000 representing the balance due under the terms of the withdrawal agreement.

Defendants' motion for summary judgment was denied by the court below on the ground that an issue of fact was raised as to whether the partnership accountants abided by the agreement in preparing the financial statements. In his opposing affidavit, plaintiff sets forth two objections to the financial statement: (1) the inclusion of a reserve for bad debts and contingencies; and (2) the exclusion of earned but uncollected commissions. Although plaintiff admits that in preparing the statement the accountants used " practices " and " procedures " that were " heretofore followed," he argues that in so doing the partnership accountants did not follow accredited or correct accounting principles. To support his statement, plaintiff submits the affidavit of an accountant which, if we read it correctly, stands for the proposition that the accounting principles involved in an audit are different from those used in determining net worth. Since the partnership accountants had only audited the books, they did not use the correct accounting principles for determining the book value of plaintiff's interest. The accountant points to the failure to adjust the reserve for bad debts and contingencies each year so that it bears a direct relationship to possible losses. He is also critical of the failure to use the accrual basis in accounting for commissions.

It may very well be that the principles used by the partnership accountants in their audit were not the correct or the proper principles for determining net worth. But these considerations are irrelevant if the accounting principles that were employed by the partnership accountant were those that were " heretofore followed ". It is uncontradicted that Emanuel Colodny & Company used the same accounting principles in preparing the financial statements as they had used in making prior audits. In any event, the courts are not a forum for determining what are and what are not " correct " accounting principles except insofar as certain principles are mandated by statute or by administrative regulation. (Cf. Internal Revenue Code of 1954, § 446; Tax Law, § 358; U. S. Code, tit. 15, § 77s, and Securities & Exchange Comm., Reg. S-X.) The courts may have to consider accounting principles in defining the profes-

sional standard of care (cf. *Ultramares Corp.* v. *Touche,* 255 N. Y. 170, and *State St. Trust Co.* v. *Ernst,* 278 N. Y. 104) but the principles themselves are established by the profession itself. Section 71 of the Partnership Law sets forth the rules for distribution in the case of the dissolution of a partnership but it contains no guides as to the accounting principles to be employed in valuing a partner's interest. We must, therefore, turn to either the accounting principles that the parties agreed to use or to their custom and practice. (*Lanier* v. *Bowdoin,* 282 N. Y. 32, 38.) Here, the agreement is controlling.

Perhaps, realizing the failure of the accountant's affidavit to raise an issue of fact here, plaintiff argues that the creation of the reserve for bad debts and the use of the cash basis for commissions were auditing " practices " as opposed to the normal and accepted " principles " of good accounting. The theory behind this argument seems to be that certain accounting " practices " were used to obtain a tax advantage but these " practices " resulted in an inaccurate picture of the financial position of the partnership. If the proper " principles " had been used, the partnership net worth would have been larger. It is significant that the accountant's affidavit offers no support for plaintiff's argument. Whether " principles " or " practices ", the fact remains that the partnership accounts were prepared on the basis of certain rules. Whether these rules have been elevated by the accounting profession to the status of principles as opposed to mere practices, is not our concern. By an exercise in semantics, plaintiff cannot raise issues of fact. When plaintiff executed the withdrawal agreement, he assented to the use of " accounting principles " that were " heretofore followed " though the use of such principles might not have maximized his net worth. The affidavit of the partnership accountant states, without contradiction, that the effect of the reserve for bad debts upon the valuation of plaintiff's interest was discussed in the course of the negotiations for the withdrawal agreement. Also, plaintiff had a right of access to the partnership books so we may assume that he knew the partnership's practice in accounting for commissions. (Partnership Law, § 41.) Accordingly, the order should be reversed and defendants' motion for sum-mary judgment granted, with costs.

RABIN, J. (dissenting). It is the position of respondent that in arriving at the " book value " of his interest, the designated accountant failed to credit earned but uncollected sales commissions, whereas he deducted expenses incurred in effecting the

sales, and that large reserves for contingencies which never existed were listed as liabilities. Respondent claims that in so doing the accountant failed to carry out the agreement between the parties as to the manner in which the accounting should be done. He urges that whereas the accountant may have followed past "practices", the agreement called for the following of past accounting "principles" which he asserts would equate with good accounting principles. Sufficient has been shown to raise a triable issue on that question. If, indeed, the accountant failed to follow the procedures agreed upon between the parties then the respondent should not be bound by the accountant's report. Appellants have not shown sufficient on the second issue of accord and satisfaction to enable the granting of summary judgment on that defense. The order appealed from should be affirmed.

Peck, P. J., and Breitel, J., concur with Bastow, J.; Rabin, J., dissents and votes to affirm in opinion in which Cohn, J., concurs.

Order reversed, with $20 costs and disbursements to appellants, and the motion granted, and judgment is directed to be entered in favor of the defendants dismissing the complaint herein, with costs.