**W. F. SCHUNK, Appellant**
**(Defendant below),**

**v.**

**Seymour THICKMAN and William R. Knox, Appellees (Plaintiffs below).**

**No. 3612.**

Supreme Court of Wyoming.

Jan. 26, 1968.

Henry A. Burgess, Sheridan, for appellant.

Lawrence A. Yonkee, of Redle, Yonkee & Redle, Sheridan, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice GRAY delivered the opinion of the court.

This is an appeal by the defendant, W. F. Schunk, from an order and judgment of the trial court decreeing a final settlement of the respective interests of the parties, as partners, in a dissolved medical partnership. The difficulties of the partners in dissolving and winding up the affairs of this partnership were before us on two previous occasions, Thickman v. Schunk, Wyo., 391 P.2d 939; Thickman v. Schunk, Wyo., 410 P.2d 987; and in addition to settling several questions pertinent to this appeal, those appeals furnish the general background leading up to the instant, and hopefully the last, dispute of the former partners.

To recapitulate, it was settled that in January 1963 the parties, together with Dr. MacLean, were partners doing business as the Schunk Clinic. The term of the partnership as fixed by their agreement was at will with the proviso, however, that if a partner withdrew the remaining partners would have the option to continue the partnership business and to purchase the retiring partner's interest at a sum equal to his capital account as reflected on the books of the partnership, plus his share of the net profits or less his share of the losses. The evaluation of the interest so fixed was exclusive of any interest in the book value of the accounts receivable and payment of a withdrawing partner's interest in the accounts receivable was contingent upon whether or not such partner engaged in the practice of medicine within the county for a period of one year. If he did, he forfeited the interest. If not, he was to be paid the value of his interest in installments beginning at the end of the period, which obligation was to be evidenced by a promissory note.

Toward the end of January 1963 there was disenchantment with the venture among

the partners and MacLean withdrew as of April 30, 1963, and set up a practice outside the county. His capital account, which in keeping with the partnership agreement did not include any interest in the accounts receivable, was evaluated on the basis of a statement of accounts of the various partners prepared from the books of the partnership by the firm's accountant as of that date, and the amount so determined as due MacLean from the partnership for his capital account is not disputed. In the meantime Schunk gave notice to MacLean and also to Thickman and Knox that he would exercise his option to acquire their interests in the partnership in keeping with the terms of the agreement and would continue on with the Schunk Clinic. Thickman and Knox, however, did not withdraw from the partnership until June 30, 1963, and thereupon each commenced separate practices in the county.

Thereafter the trial court decreed that the partnership so far as MacLean was concerned was dissolved on April 30, 1963, and that Schunk had settled with MacLean in accordance with the partnership agreement. A part of the settlement of importance here was an installment note payable to MacLean in the sum of $20,580.08 and signed by Schunk, which although dated May 1, 1963, was not executed and delivered until October 22, 1963. The amount of the note equaled the value of MacLean's interest in the accounts receivable and payment was conditioned upon compliance with the non-competing provisions of the partnership agreement.

The partnership so far as Thickman and Knox were concerned was held to be dissolved on June 30, 1963, and it was ordered that the winding up and settlement of the accounts between those partners and Schunk should be had under the terms of the partnership agreement. The trial court also retained jurisdiction of the matter pending final settlement of the partnership affairs. On the second appeal this decree of the trial court was affirmed in all respects,

Thickman v. Schunk, supra, 410 P.2d at 990.

Subsequently, at the joint request of the parties, the accountant extended the April 30, 1963, statement of the capital accounts of Schunk, Thickman, and Knox, per books, to reflect the result of operations for the months of May and June 1963. That computation, as disclosed by the balance sheet of June 30, 1963, and by the accountant's report, did not undertake to deal with the MacLean note and therein lies the crux of the present dispute.

■ Thickman and Knox, as plaintiffs, moved the court for an order requiring the defendant Schunk to pay them the amount of their capital accounts as reflected on the books of the partnership, which of course included no payment for their interest in the accounts receivable. On the other hand, Schunk moved the court for an order which in effect was an attempt to surcharge the capital accounts of Thickman and Knox with some $6,860 each representing one-third of the liability on the MacLean note. On this facet of the case Schunk, of course, had the burden of proof. Abrams v. Rushlight, 157 Or. 53, 69 P.2d 1063, 1066, 111 A.L.R. 1292; Stevens v. Gray, 123 Utah 395, 259 P.2d 889, 891. See also Tregea v. Mills, 11 Wyo. 438, 72 P. 578, rehearing denied 73 P. 209.

The matter was submitted to the trial court upon the contents of the motions, the supporting documents, and the written memoranda of counsel. The trial court, in disposing of the respective claims of the parties, found that the "liability" for payment of the MacLean note was the individual "liability" of Schunk and ordered and adjudged that Schunk pay to Thickman and Knox the respective amounts claimed. In this connection perhaps we should also mention that the trial court, in its memorandum opinion, regarded the problem of the treatment of the MacLean contingent obligation flowing from his interest in the accounts receivable as one not provided for by the partnership agreement or by the Uniform Partnership Act, §§ 17-195 to

17–237, W.S.1957, and it was therefore concluded that resort should be had to § 17–199, W.S.1957, which under such circumstances would permit "the rules of law and equity" to be applied. It was also concluded that it would be inequitable to charge Thickman and Knox for any part of the MacLean obligation inasmuch as Schunk was entitled to all of such accounts, which incidentally according to the balance sheet were in the amount of $100,448.93 on June 30, 1963.

Although Schunk argues that the trial court was clearly in error in its conclusion that the partnership agreement did not provide for the treatment to be accorded the MacLean contingent obligation as a partnership obligation so far as Schunk, Thickman, and Knox were concerned, such argument is not convincing. It is premised upon the language of the agreement that the accounts receivable "shall be an asset of and remain in the physical possession of the clinic." That, of course, does not tell the full story so far as the partners were concerned. Preceding that language in the same article is a provision applicable to a withdrawing partner that "In evaluating the interest of a partner hereunder no consideration shall be given to his interest in the accounts receivable" and the record discloses that the capital accounts of the partners were carried on the books on that basis. Also militating against the argument of Schunk is the provision that the Mac-Lean obligation "shall be a personal and individual obligation of each of the partners and shall be evidenced by a promissory note." That provision is scarcely consistent with the argument that the general language upon which Schunk relies clearly provided that the MacLean obligation was a partnership liability on the date of dissolution and was to be treated as such. Thus, to the extent the trial court concluded the agreement failed specifically to control the disposition to be made of the MacLean contingent obligation, we agree.

There are other provisions in the agreement, however, that to us are of significance in determining whether the trial court was warranted in reaching the result of which Schunk complains. The amounts due Thickman and Knox as withdrawing partners who had forfeited any interest in the accounts receivable, as previously indicated, were sums equal to their capital accounts as of June 30, 1963. A "capital account" was defined in article 13 of the agreement to mean "the value of his [partner's] undivided interest in the partnership assets as reflected by the partnership books." Insofar as those accounts were affected by the value of the physical assets of the partnership, exclusive of accounts receivable, the "book value" was at all times made "conclusive and final," and "book value" was defined in article 13 to mean "the value of any item as shown on the books of the partnership as such books are kept and maintained in the regular course of business." Aside from such definition it has also been said that the term "book value" ordinarily means the money measure of assets and liabilities as carried on the books of a partnership. Succession of Jurisich, 224 La. 325, 69 So.2d 361, 362; Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59, 67, 47 A.L.R.2d 1410. A further provision of significance here is found in article 8 of the agreement, which provided: "All entries on the books shall be final, conclusive and binding upon all parties as to the items reflected therein unless a partner objects in writing within 30 days after such audit is completed." True, the article was directed at the closing of the books and an audit and report by a certified public accountant at the end of each "fiscal year." The agreement, however, fails to fix the "fiscal year." In view of that and in view of the joint request of the parties to the firm's certified public accountant to prepare a statement of the partners' capital accounts as of April 30, 1963, and June 30, 1963, we think we are justified in giving consideration to the provision to the extent at least that it bears upon the intentions of the partners as to the binding effect of the book entries of the partnership and particularly so when their accountant, whose

services had been utilized by the firm for many years, prepared the statement in keeping with that provision.

The impact of the foregoing upon Schunk's position that the capital accounts of Thickman and Knox should be surcharged with one-third each of the MacLean note is readily apparent. So far as the record shows there was no entry upon the partnership books as of June 30, 1963, setting up the amount as a partnership obligation, contingent or otherwise. Also, the note itself, which was the only memorandum of the obligation, was not in existence on the date of the dissolution.

In our previous decisions we held that the contractual arrangements between the partners here for settling their affairs were controlling and would be enforced, and those holdings are in keeping with the rule ordinarily applied. Succession of Jurisich, supra, 69 So.2d at 363; Hargis v. Hargis, 221 Ark. 654, 255 S.W.2d 663, 664; Soechtig v. Amick, 285 App.Div. 701, 140 N.Y.S. 2d 85, affirmed 309 N.Y. 988, 132 N.E.2d 897. In meeting that proposition, however, Schunk centers his argument upon the asserted inequity of permitting Thickman and Knox without charge to share in the "net profits" for the months of May and June 1963, which perforce would have included some income from MacLean's share of the accounts receivable. The argument, in essence, seeks to invoke the rule that the courts on occasion will decline to enforce the contractual arrangement between partners for settling their affairs where special circumstances would render it inequitable to do so. Rubel v. Rubel, supra; Egan v. Wirth, 26 R.I. 363, 58 A. 987, 992; In re Witkind's Estate, 167 Misc. 885, 4 N.Y.S.2d 933, 947–948.

While the argument sounds somewhat plausible, we need not dwell upon it. Schunk in his application to the court for aid in settling the partnership affairs did not assert that he was entitled to a sur-charge against the capital accounts of Thickman and Knox on that score. On the contrary, the court was advised that the "sole issue" before it was "whether the note to MacLean is a partnership liability or individual liability of Schunk." Nevertheless, it is apparent from the trial court's memorandum opinion that it did weigh the equities of the parties and gave consideration to the circumstances prevailing during May and June 1963, and also to the fact that Schunk stood to receive some $100,000 in accounts receivable from the dissolved partnership regardless of who paid the MacLean note. While it is not entirely clear, it would appear that the trial court concluded it would leave the parties where the accountant found them to be according to the books of the partnership on June 30, 1963, and under all of the circumstances appearing in this case we are not convinced that the trial court abused its powers in that respect.

In addition, of course, the finding of the trial court that the MacLean note was "the individual liability of the defendant, W. F. Schunk" is sustained by ample evidence. Aside from the matter of accounting, the note in question was signed by Schunk as an individual and not on behalf of or in the name of the partners. The tenor of the note gave every indication that it was, and was intended to be, the personal liability of Schunk. It is also clear that Thickman and Knox never ratified or confirmed the execution and delivery of the note by Schunk as a liability of the partnership on June 30, 1963. The fact that the note was dated prior to that date is not controlling. 40 Am.Jur., Partnership, § 277, p. 322. Consequently we cannot hold as a matter of law that the court erred in its holding that Schunk was liable for the full amount of the note to MacLean and thus its order and judgment must be affirmed.

Affirmed.